Moller v. Mallory.

---

HENRY H. MOLLER, APPELLEE, V. JAMES MALLORY ET AL., APPELLANTS.

FILED MAY 15, 1923. No. 22381.

1. **Principal and Agent:** FRAUD OF AGENT: RETENTION OF BENEFITS. A principal who retains benefits derived from the fraudulent con-duct of his agent after notice of the fraud is chargeable with the instrumentalities employed by the latter in carrying out the fraudulent purpose.

2. **Fraud:** EXCHANGE OF LANDS: MEASURE OF DAMAGES. Where the owner of land, through an agent, under circumstances such as shown

in this case, has pointed out, to one desirous of exchanging other lands for the same, land which he did not own as the land which he owned and proposed to convey, and afterwards conveyed land of much less value than that which was pointed out, and which he, the grantee, supposed he was to acquire, the party defrauded may recover the difference in value between the land shown him and the land which was actually conveyed to him.

3. **Estoppel:** EXCHANGE OF LANDS: FRAUD. The statement in a contract for the exchange of land, "We each have inspected each other's property and are dealing solely on our own judgment," etc., will not estop one of the parties, to whom other and better land than that described in the contract had been fraudulently shown by the agent of the grantor in order to induce him to enter into the same, from showing the fraud in an action for damages for deceit.

4. **Fraud:** EXCESSIVE DAMAGES. Evidence as to value of land examined, and *held* that the amount of recovery is excessive.

APPEAL from the district court for Douglas county: CHARLES A. GOSS, JUDGE. *Affirmed on condition.*

*A. R. Davis* and *Baldrige & Saxton,* for appellants.

*McKenzie, Cox, Burton & Harris, contra.*

Heard before MORRISSEY, C. J., LETTON, DAY and DEAN, JJ., BUTTON, District Judge.

LETTON, J.

This is an action to recover damages on account of an alleged fraud perpetrated by the defendants upon the plaintiff in a transaction concerning the exchange of certain real estate. There is a direct conflict in almost every essential and material question of fact in the evidence, but, the jury having accepted plaintiff's theory of the case, the facts will be stated accordingly.

Plaintiff was a farmer residing at Burwell, Nebraska. He was more or less a buyer and seller of real estate, mostly carrying out his transactions through the aid of a real estate man in Omaha named Patzman. He had become vested with the title to 320 acres of land in Cedar county, Nebraska, which he had never seen. On his way to examine the land, he stopped at Wakefield, Nebraska, and was accosted by defendant Mallory, a real estate

dealer of that place. He informed Mallory that he desired to dispose of the Cedar county land. After some conversation he gave Mallory the address of Patzman in Omaha, and told him if he found any property which might be exchanged for the Cedar county land to communicate with Patzman. Mallory did this, and informed Patzman that defendant Stageman, who lived at Randolph, owned 520 acres of land in South Dakota, which he might be willing to exchange for the Cedar county land. Patzman then made arrangements with Mallory to meet plaintiff in Sioux City, and to go with him to look at the land. When they arrived at Nowlin, a small town near where the land was situated, Mallory procured a man by the name of Jacobson to drive them out to the land. After driving several miles, Mallory said to plaintiff, "This is your land," showing a slightly rolling and apparently fertile tract in section 35. After their return to Nebraska, Mallory and Patzman, in Omaha, drew up duplicate forms of contracts which were taken by Mallory to Randolph for submission to Stageman. After some negotiations between Stageman and Patzman over long distance telephone, certain changes were made in each contract. They were thereafter signed by each of the parties. Deeds of conveyance were afterwards made in accordance therewith. Some time afterwards, when plaintiff came to examine the the land in sections 28 and 29, which was described in his deed, he found that it was not the same land which had been shown to him. The land was rough and of poor quality, a creek ran through it, with a number of ravines or draws running into the creek, with banks from 10 to 20 feet high. Very little of it is cultivable, and that only in small patches, and the land is worth a great deal less than the land in section 35 which had been shown to him. He then began this action for damages on account of fraud and deceit.

The evidence in the case is voluminous. One of the chief points in controversy is whether Mallory was the

agent of Moller or the agent of Stageman. Stageman made a special appearance in the action, objecting to the jurisdiction of the court for the reason that the action was brought and Mallory summoned in Douglas county; that he was served with summons in Cedar county; that there is not a joint cause of action against both defendants; that the allegations in the petition charging joint liability are a mere artifice and device to bring Stageman into the jurisdiction of the court in Douglas county. This special appearance was overruled. The same objections were preserved by the answer.

We are convinced from an examination of the testimony that there is evidence to warrant the finding that Mallory was Stageman's agent, that Mallory was guilty of active participation in the fraud, and that Stageman, having received and retained the fruits of the fraudulent actions and representations of Mallory after the same were brought to his knowledge, is a joint wrongdoer with him. A summons therefore might properly issue from Douglas county to be served upon him in Cedar county in the case.

The contract contains the following printed clause: "We each have inspected each other's property and are dealing solely on our own judgment, and not upon any representations that had been made to us, and have carefully read this contract before signature." It is insisted by defendants that plaintiff is estopped by reason of this recital from asserting that he has been defrauded. But the land that was shown to him, and as to which he spoke in this statement, was other land than that which was described in the contract, and, as the jury found, he was deceived and misled when he signed the paper containing this recital. Under such circumstances an estoppel cannot arise.

It is asserted that the court erred in instructing the jury with respect to the measure of damages. They were instructed that if they found for the "plaintiff he would be entitled to receive the difference between the reason-

able market value of the 360 acres of Jackson county, South Dakota land that was pointed out to the plain-tiff, and the reasonable market value of the 360 acres of Jackson county land which the plaintiff actually received in the said exchange on the 4th day of June, 1918." While some states have adopted a different measure of damages in such cases, the rule stated by the trial court is that which is accepted here. *Odell v. Story,* 81 Neb. 437; *Dresher v. Becker,* 88 Neb. 619.     See cases collected in note in 8 L. R. A. n. s. 806.

Exceptions were taken to the rulings of the court as to the admission or exclusion of certain evidence. Considering all the testimony introduced at different periods of the trial, we think defendant suffered no prejudice therefrom, except perhaps as to the testimony of plain-tiff with respect to the values of the land in South Dakota.

It is contended that Stageman cannot be held to have ratified the act of Mallory if he in fact pointed out other and better land to plaintiff than that afterwards conveyed to him. The testimony shows that Stageman is no novice in the exchange and transfer of lands. He has made no offer of rescission since acquiring knowledge of the conduct of his agent, but has insisted on the contract being carried out. He retains the fruits of the transaction, and the fact that he willingly paid Mallory a commission of $1,000 for consummating the exchange is worthy of note.

It is complained that the verdict is so excessive that it must be the result of passion and prejudice. We think there is some cause for this complaint. Excluding the testimony of plaintiff, who testified to the highest value placed upon the land by any witness, and for whose testimony an insufficient foundation was laid, four witnesses as to value testified on behalf of plaintiff. One of them valued the land in section 35, which was shown to plaintiff, as being worth $35 an acre, while that in sections 28 and 29 he valued at $3.50 an acre. Two

other of plaintiff's witnesses testified the land shown was worth $30 an acre, and the land conveyed $3.75 to $5 an acre; while another witness called by plaintiff testified that the land in section 35 was only worth $10 an acre, and the rough land $3.75 an acre. On the other hand, the witnesses for defendants, one of whom had been a register of deeds of the county, and also township assessor, testified that the land shown was worth about $20 an acre, and the rough land about $10. The highest estimate of the value of the land shown by other of defendants' witnesses was $25 an acre, and the lowest from $15 to $20, and the estimate of the rough land varied from $7.50 to $15 an acre.

The jury found the difference in value between the two tracts to be $25 an acre, or $9,000 in all. Considering the testimony with respect to the value of the land, we are convinced that it does not sustain a verdict for $9,000 as the difference in value. The jury having found in favor of plaintiff, he is entitled to recover his actual damages, but he is not entitled to a speculative, or excessive, award. Considering the mass of testimony and the cost of a new trial, we are reluctant to set aside the verdict in toto. The testimony as to value, all elements being considered, satisfies us that the verdict is excessive to the extent of $4,500. If plaintiff, therefore, is willing to remit the sum of $4,500 as of the date of judgment, the judgment, as thus reduced, will be affirmed, otherwise it will stand reversed.

The testimony in the case is peculiar, and would be unsatisfactory whether the jury found for plaintiff or for defendant. The zeal of plaintiff's attorney led him in some instances rather close to the border line during his examination of witnesses, but if there is a second trial he will probably be a little more circumspect in his suggestions and implications to the jury.

The judgment is reversed unless plaintiff file a remit-

titur in the above sum within 20 days.   In such case it will stand affirmed.

AFFIRMED ON CONDITION.