THOMAS G. DINSDALE, APPELLANT, V. SPRAGUE TIRE & RUBBER COMPANY, APPELLEE.

FILED MAY 15, 1923.   No. 22342.

1. **Principal and Agent**: UNAUTHORIZED CONTRACT: RETENTION OF BENEFITS. A principal cannot knowingly retain the benefits of a sale procured by a soliciting agent and escape legal obligations assumed by the agent in the name of the principal as a condition of the purchase.

2. **Corporations**: SALE OF STOCK: CONTRACT. Where soliciting agents of a corporation sell some of its capital stock, without notice of any limitation on their power, and at the same time execute in writing, as a condition of the purchase, an option granting to the purchaser the right to cancel the sale, if the corporation fails to resell within six months half the capital stock thus sold for the price originally paid for the whole, the subscription and the option may be considered parts of the same transaction, constituting a single contract.

3. ——: ——: SECRET AGREEMENT. The doctrine that a secret agreement to procure capital stock at a price less than the uniform price paid by other stockholders is void may not apply to a sale at the established price on condition of granting to the purchaser an option to cancel the sale, if the corporation fails to resell within six months half his stock at the price originally paid for the whole.

4. ——: ——: POWERS. A corporation selling its capital stock under a subscription, providing on its face that shares sold without payment in cash shall be retained by the corporation as collateral for unpaid notes for the purchase price, may be held to have power

to buy, hold and resell its own capital stock, in absence of proof that it has no such power.

5. ———: ———: Fraud. It is not necessarily a fraud upon a corporation and its stockholders generally for a purchaser of some of its capital stock to exact from its soliciting agents, as a condition of the purchase, a written option granting to him the right to cancel his purchase, if the corporation fails to resell within six months half the stock purchased at the price originally paid for the whole.

Appeal from the district court for Douglas county: Willis G. Sears, Judge. *Reversed.*

*J. C. Martin* and *Sullivan, Wright & Thummel,* for appellant.

*Gaines, Van Orsdel & Gaines, contra.*

Heard before Morrissey, C. J., Letton, Rose and Dean, JJ., Begley, District Judge.

Rose, J.

This is a suit in equity to cancel a contract for the purchase of capital stock issued by a corporation, to require the surrender of a note for half the purchase price, and to recover back the amount paid for the other half. Plaintiff is the purchaser and defendant is the corporation that issued and sold the stock. The sale contract was executed July 24, 1919. The stock purchased consisted of 100 shares, each of the par value of $100. The purchase price was $7,500, paid by two notes of $3,750 each, due in 6 months. The right of plaintiff to the relief demanded is based on written terms of the purchase. His theory of the case is that the sale was a conditional one and granted him an option to cancel it, a right which he exercised according to contractual conditions. The controversy arose in the following manner: Defendant incorporated for the purpose of manufacturing tires and appointed Weaver & Meredith fiscal agents to sell its capital stock. They supplied E. A. Jenkins and George Hasman with subscription blanks and sent them out as soliciting agents to procure subscriptions. Hasman and Jenkins, without immediate success, importuned plain-

tiff, a dealer in live stock, hay and grain at Palmer, to purchase stock, but finally induced him, July 24, 1919, to sign the subscription and the notes described. Before closing the transactions plaintiff exacted for the subscription and the notes a receipt bearing the signature of defendant by Jenkins and Hasman, agents. On the back of it there is the following agreement:

"Palmer, Neb. July 24, 1919.

"It is agreed that if we do not sell 50 shares of stock in the Sprague Tire & Rubber Co. belonging to Mr. Tom Dinsdale for $150 per share before the notes given in payment for the same become due that the company will, at Mr. Dinsdale's option, either cancel this agreement or, by the payment of the interest due thereon, extend the notes from time to time until the same are paid.

"Sprague Tire & Rubber Co.,
"By E. A. Jenkins, Special Rept.
"Geo. Hasman, Agent."

One of the notes was sold to an innocent purchaser to whom plaintiff bound himself for payment. The proceeds of the sale of this note, less the commission of the agents for selling the capital stock, were sent to and retained by defendant with the subscription and the other note. The capital stock for which plaintiff subscribed was never delivered to him, but was held by defendant as collateral security for the unpaid note. Defendant did not resell for plaintiff, within 6 months, 50 shares at $150 a share. Before the time for exercising the option expired, plaintiff made a futile demand for the cancelation of the subscription, for the surrender of the unpaid note, and for the amount of the note transferred to the innocent holder. This suit was begun to obtain the relief thus demanded. On issues raised by the pleadings, the facts narrated are either admitted or conclusively established by the proofs.

The defenses may be summarized as follows: The soliciting agents had no authority to enter into the agreement indorsed on the back of the receipt. Without

knowledge of the unauthorized agreement, defendant ac-cepted the subscription, the unpaid note and the partial payment out of the proceeds of the other note. The sale of all capital stock was open to purchasers on uni-form terms prescribed in the subscription contracts sup-plied to the soliciting agents. Plaintiff exacted the fraudulent conditions. The unauthorized agreement was void as a fraud upon other subscribers and upon de-fendant. Plaintiff was an active participant in the fraud and is bound by his subscription as an unconditional purchaser without any legal right to enforce the void option to cancel the purchase upon failure of defendant to resell half his capital stock at the price paid for the whole. The facts upon which these defenses are based appear in an answer pleading a counterclaim for judg-ment on the unpaid note. The trial in the district court resulted in a dismissal of plaintiff's suit and in a judg-ment in favor of defendant for the full amount of its counterclaim. Plaintiff has appealed.

Did the trial court take an erroneous view of the facts and the law? The inquiry is not complicated by parol evidence contradicting a written instrument. The transactions were reduced to writing. The soliciting agents represented defendant alone. Through them plaintiff dealt with defendant. They approached him with a form of subscription furnished by defendant, but containing no warning that their powers were limited. The agents appeared to have the powers which they ex-ercised on behalf of defendant in executing the option. They could not have sold the stock to plaintiff without granting to him the right to cancel the sale on the terms to which they subscribed on behalf of their principal. The sale itself depended on the agency through which the option was executed. After defendant learned the conditions of the sale it retained the subscription thus procured and refused to restore the consideration to plaintiff. The agents, by virtue of their actual authority to solicit subscriptions without notice of limitations on

their powers, not only had the apparent or ostensible authority which plaintiff recognized as genuine in exacting the option, but defendant itself, after it acquired knowledge of what they had done, retained the fruits of their efforts and thus adopted the means employed by them in consummating the sale. These are circumstances under which a principal cannot retain the benefits of a sale procured by a soliciting agent and escape the obligations assumed by the agent in the name of the principal as conditions of the purchase.

What is the nature of the transactions? If legitimate, they amount to a conditional sale with a buyer's option to cancel the purchase upon failure of the seller to resell half the stock within 6 months at the price of the whole. All terms of both the sale and the option are parts of the same transactions, constitute a single contract, and must stand or fall together, unless plaintiff is answerable for some wrong amounting to a fraud upon other purchasers of stock.

Defendant invokes the rule that a secret agreement by a purchaser to buy capital stock at a price less than other purchasers similarly situated are required to pay is a fraud upon them and upon creditors. Defendant received from plaintiff the regular price in the form of cash and a collectable note. These considerations would have been retainable had defendant resold 50 shares of plaintiff's stock at $150 a share. In that event defendant would have received from plaintiff the same price as that paid by other stockholders. Owing to the failure of defendant to prevent the conditional sale from becoming absolute, it has on hand the shares of stock involved in the transactions. If the stock cannot be resold at the original price, the loss is attributable to defendant, and not to plaintiff who did nothing to cause it except to exercise the option granted in writing by defendant as a condition of his purchase. The doctrine invoked, therefore, is not applicable to the facts.

The record does not show that defendant, while mak-

ing the sale to plaintiff, was without power to buy, hold and resell its own stock. The subscription declared on its face: "It is agreed that the shares of stock are to be held as collateral to the note of the purchaser." This was not the utterance of agents. It was a condition of sale demanded by defendant itself. The pledge implies, if it does not express, power of the corporation to hold and sell its stock for the benefit of itself and its stockholders. Want of power as a defense is not proved.

Did plaintiff by joining in the option commit a fraud which defeated the cancelation of the purchase? There was no evidence of fraud on his part; unless fraud is inferable from the condition relating to the resale of half the shares purchased for the price conditionally paid for the whole. Under the circumstances this does not establish fraud. Profit in some form is the motive for the purchase of corporate stock. Without the hope of gain no one would make an investment in such property. In a period of inflation, during which prices of property doubled in a short time, an agreement for the payment of twice what corporate stock cost, as a condition of the resale, did not of itself constitute fraud on the part of plaintiff who had no means of knowing how fast defendant's stock would increase in value, but the agents of defendant represented that half of what he bought could be sold again within 6 months for double its original cost. Plaintiff, in executing the notes for the purchase price, risked his credit on that basis alone, as he had a right to do, and did not himself commit any fraud.

There was no defense to the petition and the prayer thereof should have been granted. The counterclaim should have been dismissed. For the purpose of granting this relief, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.