CHARLES E. KEENAN, APPELLEE, v. NELLIE McCLURE ET AL., APPELLEES: DAKOTA COUNTY ET AL., APPELLANTS.*

FILED JUNE 29, 1934. No. 28700.

*Footnote—On rehearing, former opinion, reported 125 Neb. 753, withdrawn, and judgment of district court affirmed.

 

*Sidney T. Frum* and *Malcolm R. Smith,* for appellants.

*W. V. Steuteville* and *Sherman W. McKinley, Jr., contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MESSMORE, District Judge.

ROSE, J.

As brought, this was a suit in equity to foreclose a 3,500-dollar mortgage on a tract of land in Dakota county. The mortgage was dated March 13, 1928, and the debt was due March 13, 1931. Charles E. Keenan, plaintiff, was mortgagee and Nellie McClure and Robert L. McClure, defendants, were mortgagors. Dakota county and Harry Rockwell, county treasurer, also defendants, were in a controversy with plaintiff Keenan over taxes, the lien for which Rockwell as county treasurer discharged of record December 5, 1930, and reinstated of record March 5, 1931.

Keenan's petition to foreclose the mortgage was filed March 23, 1931. A decree of foreclosure was entered June 8, 1931, and issues as to taxes were retained for future consideration. Under the decree the mortgaged land was sold to Keenan at judicial sale April 12, 1932, for $4,036.34, debt, interest and costs. Of the foreclosure decree and sale no complaint is now made herein.

In a supplemental decree October 26, 1932, the district court found the issues in favor of Keenan in his controversy with Dakota county and its treasurer and canceled the apparent lien for the reinstated taxes. Dakota county and the treasurer appealed. In a former opinion the supplemental decree was reversed, with directions to reinstate the taxes in controversy as unpaid liens on the mortgaged land. *Keenan v. McClure,* 125 Neb. 753.

Upon a motion for a rehearing the cause was reargued at the bar and submitted for further consideration. The question for determination is the validity of the county treasurer's action in reinstating on the records of his office the tax lien which he had formerly discharged of record as paid. In reaching a conclusion in the light of new arguments on both sides, the entire record has been reexamined.

Before maturity of the mortgage March 13, 1931, Keenan, mortgagee, had a contractual right to accelerate maturity of the debt for nonpayment of delinquent taxes and on account of such delinquency he directed his attorney to institute a foreclosure suit. Prior to the preparation of a petition therefor, the treasurer discharged the tax lien and made the official records show full payment of delinquent taxes, thus preventing foreclosure proceedings until after March 13, 1931.

The treasurer sold the mortgaged land to **Katrina** Quivey of Salt Lake City, Utah, for delinquent taxes November 5, 1928, but which were not delinquent when the mortgage was executed. From her Keenan purchased the tax sale certificate March 16, 1929, and by virtue thereof and payment of taxes for 1928 he acquired a tax lien for $471.40 in addition to his 3,500-dollar mortgage. The county had received from Quivey and Keenan $471.40, including a fee of 25 cents, and the tax lien on the mortgaged land became the lien of Keenan and was not thereafter the lien of Dakota county or of the treasurer.

December 5, 1930, Nellie McClure, mortgagor, defendant, went to the office of the county treasurer and gave him her check on the First National Bank of Sioux City, Iowa, for $678.10. This check represented two items—one for $471.40 to redeem her land from the tax sale evidenced by the tax sale certificate held by Keenan and the other for $206.70 to pay her taxes on the mortgaged land for the year 1929. The treasurer accepted her check instead of money, immediately issued and delivered to her his official certificate or receipt showing redemption of her

land from the tax sale and the payment of taxes for the year 1929. This resulted in discharging of record all her delinquent taxes on the mortgaged land, including Keenan's lien for $471.40, money previously received by the treasurer for the county. These transactions occurred December 5, 1930, in the office of the treasurer, who immediately notified Keenan by mail that a certificate or receipt of redemption of the land from the tax sale had been issued to Nellie McClure. Pursuant to the notice, Keenan appeared at the office of the treasurer during the forenoon December 6, 1930, surrendered his tax sale certificate, which was then canceled, received and cashed the treasurer's check for $471.40, redemption money. The First National Bank of Sioux City, Iowa, upon which the McClure check to the treasurer for $678.10 had been drawn, was closed on account of insolvency at noon December 6, 1930, and did not pay the check. March 5, 1931, Keenan was notified by the treasurer that he had canceled the redemption certificate or receipt for $471.40 and had reinstated of record the taxes against the -McClure property. Keenan replied the next day that he thought the county would have to stand the loss.

Should the loss occasioned by the transactions between Nellie McClure and the treasurer fall on Keenan? The witnesses do not agree as to the exact time the McClure check was presented to the treasurer December 5, 1930—Friday. Rockwell, treasurer, testified that Nellie McClure came in about 3 p. m. and that he received her check between 3 and 4 o'clock. By her testimony she fixed the time at 1:30. That she was more nearly correct is shown by evidential circumstances. After leaving the office of the county treasurer, she went to an insurance office in Dakota City, the county seat, and gave the insurance agency her check for $18.40 on the same bank, the First National Bank of Sioux City, Iowa, for fire insurance. This check was presented to the Nebraska State Bank of South Sioux City, Nebraska, the same day, December 5, 1930, forwarded to the First National Bank of Sioux City,

Iowa, and there paid before that bank closed at noon the
next day—December 6, 1930. The fair inference is that
the McClure check for redemption and for payment of
1929 taxes would also have been paid, if the treasurer,
who received it earlier the same afternoon, had acted
with the same diligence as the insurance agency. The
check for redemption could have been deposited December
5, 1930, with the Bank of Dakota City, his depository. It
could have been forwarded from there by mail to the First
National Bank of Sioux City, and cleared during the fore-
noon December 6, 1930. The bank on which the McClure
check for taxes was drawn was about five miles from the
county treasurer's office and the check could have been
directly presented for payment December 5, 1930. The
treasurer did not see fit to pursue either course, though
he had accepted the check instead of money. When he
received the McClure check for $678.10 December 5, 1930,
he put it in the cash drawer, where it remained until
December 8. He made no effort to deposit or cash it
December 5 or 6. When he did offer it at his depository
it was rejected because the bank on which it was drawn
had been closed. He had canceled Keenan's tax lien and
tax sale certificate without notice. He kept both the
McClure check and Keenan's canceled tax sale certificate.
He made no effort to collect the check from the drawer
thereof or to collect from her any part of the taxes can-
celed by him. He did not present to the receiver of the
insolvent bank a claim for the unpaid check though the
drawer thereof had $1,000 on deposit when the check was
issued and only $18.40 less when the bank was closed.
The failed bank reorganized and paid 60 per cent. of de-
posits. The treasurer, with the McClure check for $678.10
in his hands, made no effort to impound the McClure div-
idend or 60 per cent. of the McClure deposit and apply
the proceeds on the check, though permitted by Keenan
to do so without prejudice to the county or its treasurer;
did not attempt to recall the redemption certificate he
put into the hands of the tax debtor; did not transfer to

Keenan the unpaid check as evidence of a claim for the McClure dividend; did not restore to Keenan the latter's canceled tax sale certificate. The cancelation of the taxes postponed foreclosure of the mortgage while accumulating interest increased the mortgage debt. The reinstatement of the taxes created an apparent lien superior to that of the mortgage.

When accepting payment to redeem land from a tax sale to an individual purchaser, a county treasurer acts in the capacity of a trustee for the holder of the tax sale certificate which evidences former payment of taxes to the county. Money paid to a county treasurer to redeem land from a tax sale to an individual purchaser belongs. to the latter, not to the treasurer nor to the county which already received the taxes. After accepting the check from the tax debtor, instead of exacting the redemption money, the treasurer was required to exercise reasonable diligence in presenting the check for payment. A statutory rule is as follows:

"A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay." Comp. St. 1929, sec. 62-1603.

Negligence of the treasurer left his reinstatement of canceled taxes without justification in either law or equity. The determining issue in the controversy between Keenan and the treasurer is not whether the McClures paid their tax debts with a worthless check, but whether the treasurer, by reinstatement of the taxes, escaped the consequences of his own negligence and imposed the resulting loss on Keenan who was not chargeable with negligence or wrong-doing of any kind. Under the circumstances outlined herein, the loss resulting from the treasurer's negligence does not fall on Keenan. The reinstatement was properly canceled by the district court. The former opinion to the contrary is withdrawn, the reversal set aside, and the judgment of the district court affirmed.

JUDGMENT ACCORDINGLY.