GENERAL CREDIT CORPORATION, APPELLEE, v. NORMA LEE MOORE ET AL., APPELLANTS.

FILED MAY 1, 1935. No. 29231.

*Robert Huston,* for appellants.

*O. A. Drake, contra.*

Heard before GOSS, C. J., GOOD, DAY, PAINE and CARTER, JJ., and LOVEL S. HASTINGS and LIGHTNER, District Judges.

LIGHTNER, District Judge.

Replevin for a Chrysler automobile. Plaintiff claims that it has a special interest by reason of a chattel mortgage given to the vendor and assigned to plaintiff. On default

in payments plaintiff elected to declare the whole amount due and brought this action. A jury was waived. Finding and judgment were for plaintiff, and defendants appeal.

The defendants are husband and wife. Elmer T. Moore, the husband, carried through all the negotiations in the purchase of the car. He gave therefor an old Dodge which he owned, his note for $182, to which he also signed his wife's name, and the note and chattel mortgage for the balance which are the subject of this dispute. He did not sign his own name to this note and mortgage, but his wife's name only. It is now claimed that he did not have authority to do so.

The grounds upon which the district court found in plaintiff's favor do not appear, but probably upon the theory that Mrs. Moore ratified the transaction. In support of this theory it appears from the record that Mr. and Mrs. Moore immediately prior to the purchase rode in the car with the salesman, at which time the qualities of the car and payments were discussed; that immediately after the sale the bill of sale to Mrs. Moore was sent to her which apprised her, so she says, that it was her car; that immediately after it purchased the paper plaintiff sent a notice to Mrs. Moore, and the day after the first payment was due it sent a past-due notice to her, a letter or two, wired and telephoned and got no response. The chattel mortgage was duly filed in the county clerk's office of the county of Mrs. Moore's residence in accordance with section 36-301, Comp. St. 1929, several days after the sale. It further appears that, regardless of these facts, which would bring home to Mrs. Moore that the sale was to her and that the purchase price had not been paid and that plaintiff was insisting on payment from her, Mrs. Moore continued in the possession and use of the car. It can certainly not be held, in view of these facts, that a finding that Mrs. Moore ratified the transaction is not supported by the evidence.

"A principal who accepts the fruits of a contract made by an agent in excess of his authority is liable to the person with whom such contract was made, although misinformed as to some of its provisions." *Brong v. Spence,* 56 Neb. 638.

"A principal cannot knowingly retain the benefits accruing from the unauthorized act of his agent and escape the legal obligations, assumed by the agent in the name of the principal, from which the benefits accrue." *Furrer v. Nebraska Bldg. & Investment Co.,* 111 Neb. 423. See *Dinsdale v. Sprague Tire & Rubber Co.,* 110 Neb. 290; *Moller v. Mallory,* 110 Neb. 269; *Stanton Nat. Bank v. Swallow,* 113 Neb. 336.

"Ratification by the principal of the unauthorized act of his agent has the same effect as prior express authority." *Furrer v. Nebraska Bldg. & Investment Co., supra.* And generally relates back to the time the unauthorized act was done. 2 C. J. 516.

It seems to be Mr. Moore's theory that he bought the automobile and gave it to Mrs. Moore. It is true that he turned in his 1929 Dodge at $600 and gave another note of $182 secured by a second mortgage on the Chrysler, to which note and mortgage he signed both Mrs. Moore's name and his own. However, he could only give away that which he had. 28 C. J. 644; *Fischer v. Union Trust Co.,* 138 Mich. 612.

"A person is required to be just before he may be generous, and gifts will not be permitted to stand when the rights of third persons are thereby infringed." 28 C. J. 655.

"In a conflict between two titles emanating from the same source, the one being a gift and the other a purchase for value without notice of the other, the purchase will prevail, although it is subsequent to the gift. *Bell v. McCawley,* 29 Ga. 355." 28 C. J. 655, note 44 (a) (1).

We are familiar with the rule that an agent who does not purport to bind himself personally by signing his principal's name to an unauthorized contract does not

generally become personally liable on the contract, but only in an action in deceit. *Brong v. Spence, supra; Cole v. O'Brien,* 34 Neb. 68, 33 Am. St. Rep. 616; 2 C. J. 806.

The rule is far from universal and there are many exceptions to it. See 2 C. J. 806. But to hold that the chattel mortgage was invalid because Mr. Moore did not have authority to sign Mrs. Moore's name to it, and invalid as to him because it did not purport to bind him, and that he could then give the car to Mrs. Moore free of the mortgage, would be to permit Mr. Moore to profit by his own wrong, a thing which the law will not permit him to do. If it can be said that he purchased the car himself and let the title go to her because he wanted to make her a gift, the above rule in regard to gifts applies; that is, that he could give away only that which he had, and he could not acquire the whole title free of liens by the simple expedient of signing some one else's name to the papers which represented the transaction. What he had at the close of the transaction if he was the principal and put the title in his wife's name because he intended to give it to her was a Chrysler subject to the mortgage against it, and such was all he could give to her. But if it be contended that he bought the car directly for her and that the title went to her at once, then he was her ostensible agent, and the mortgage is good, on account of the facts above recited, by ratification. In fact, we fail to see any ground by which an attempt of this kind can be sustained. Even if Mrs. Moore thought the car had been paid for in full and knew none of the facts that were brought to her attention, she cannot hold it against the mortgage. She does not occupy the favorable position of an innocent purchaser, gave nothing, and cannot profit by the wrongful act of her husband.

In a recent Florida case, *Intertype Corporation v. Pulver,* 101 Fla. 1177, it was held:

"Incapacity of an agent to execute a purchase-money mortgage is insufficient by way of defense to the foreclosure of such mortgage, when the purchaser seeking to

interpose such defense still retains possession of the property. Wiltsie, Mortgage Foreclosure (4th ed.) sec. 199.

"It is an established principle of law that when a person acts for another who accepts the fruits of his efforts, the latter is deemed to have accepted the methods employed, and he may not, even though innocent, receive the benefits and at the same time disclaim responsibility for the means by which they were acquired"—citing Florida cases and 21 R. C. L. 932, sec. 111; 1 Mechem, Agency (2d ed.) 316.

Defendants rely on rules and illustrations found in Restatement, Law of Agency. A careful examination of chapter 4, "Ratification," secs. 82 to 104, is, it seems to us, unfavorable, rather than favorable, to defendants' contentions. The rule laid down in section 98 is: "The receipt by a purported principal, with knowledge of the facts, of something to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except through such act, constitutes an affirmance." It is stated further in sections 98 under comment b: "The receipt of benefits by the purported principal without knowledge of the transaction between the purported agent and the third person or without knowledge of other material facts does not constitute affirmance." It is under comment b that the illustration quoted and relied upon by defendants is found: "3. Without power to bind P thereby, A purports to purchase an automobile from T on P's credit. Without knowledge of the transaction, P receives the car as a gift from A. There is no affirmance thereby." However, it is said just before the illustration and as part of the comment: "The rule applicable where the purported principal later acquires knowledge and fails to return the things or their value is stated in section 99." And the rule laid down in section 99 is as follows: "The retention by a purported principal, with knowledge of the facts and before he has changed his position, of something which he is not entitled to retain unless an act

purported to be done on his account is affirmed, and to which he makes no claim except through such act, constitutes an affirmance."

Illustration 1 from section 94, also quoted and relied on by defendants, does not apply, since that was a case where the agent, without power to bind the principal, bought goods for the principal and paid the purchase price out of his own money. The contest evidently was between the agent and the principal, and it does not appear from the illustration that the principal with knowledge of the facts accepted and retained the goods. He simply learned that the alleged agent had purchased the goods and did nothing.

There are many distinguishing features between this case and the case of *Rust-Owen Lumber Co. v. Holt,* 60 Neb. 80, and the other cases cited by appellants. In the *Rust-Owen* case the material for the dwelling-house which was constructed on the wife's lots was in the first instance sold to the husband on his personal account, and not as the agent of the wife. In discussions of the matter between the husband and wife, it was understood that he was to pay for the material necessary for the building by working at his trade. The public records showed that the lots stood in the wife's name. There is the further thought that the completed building could not very well be turned back, and the foreclosure of the mechanic's lien might lose to the wife, not only that which she obtained by the husband's unauthorized act, but her own lots as well. Furthermore, it will be noted from the discussion near the close of the opinion that, if the lower court had held that to take possession of the building after it was completed and live in it constituted a ratification, the supreme court would probably have affirmed such holding. All the court held was that the occupancy by the wife with her husband of a building constructed by the husband on the wife's land as a family residence did not raise a conclusive presumption of ratification of the husband's acts, so as to make

effective a mechanic's lien, where none theretofore legally attached; that, at most, it was only a circumstance to be considered with other facts and circumstances for the purpose of determining the question of the alleged ratification. Another distinguishing fact referred to in the opinion is that it is the duty of the husband to furnish a home, and that the wife might assume that in building the dwelling-house he was doing so in fulfilment of such obligation. But there is no duty, we believe, to furnish an automobile, especially not a Chrysler when they already had a Dodge.

The question of the wife's personal liability is not presented, the car having been sold for more than this note.

This is a law action, and the finding of the lower court, if there is sufficient evidence to sustain it, has the same conclusive effect as the finding of a jury. There is ample evidence to sustain the judgment of the lower court, and the judgment is

AFFIRMED.