C. B. MILLETT, APPELLANT, V. J. L. MILLER, APPELLEE.

280 N. W. 442

FILED JUNE 24, 1938. No. 30399.

*William Morrow* and *F. E. Williams,* for appellant.

*Neighbors & Coulter, contra.*

Heard before ROSE, EBERLY, DAY, PAINE and MESSMORE, JJ., and KROGER, District Judge.

DAY, J.

This is an appeal by one who brought an action to recover the amount due on a note from a judgment entered on an adverse verdict of a jury. The question presented is whether a check, given to the son of the payee, and not presented for payment within the six days between the time of its receipt and the day that the bank closed, is payment of the note.

The appellee admitted the execution of the note and asserted payment. We are, therefore, concerned entirely with the question of payment. April 4, 1928, the appellee drew his check on the Nebraska State Bank of Bridgeport in the sum of $2,013, payable to the appellant, and delivered the same to the son of the appellant. From that time until the trial of this case, the check was in the possession of the appellant or his son. The note was never in the possession of the appellee.

At the time the check was drawn on April 4 the appellee had money on deposit subject to check in excess of the amount of the check, and this condition continued until the bank closed on April 10, 1928. The appellant was a stockholder in the bank, and his son, Gregg, worked there. An exhibit in the record discloses that Miller drew some ten checks between April 2 and April 10, 1928, and that they were paid upon presentation to the bank.

The first question discussed herein is the agency of the son. The appellee, Miller, went to the bank and drew the check and gave it to the son for the exact amount due upon the note. The son took the check and called his father, C. B. Millett, the appellant in this case. The father drove over from Bayard to Bridgeport, a distance of about eighteen miles, and, in company with his son, called at the Miller home and talked with Mr. Miller that night. It is not apparent that anything was said at that time about the check or the note. The conversation is said to have been relative to the condition of the bank, but neither the appellant nor his son disclosed to the appellee, Miller, that the bank was unable to pay its checks. It was stated by them that the cash reserve must be augmented. Neither the appellant nor his son, at that time nor at any other time, tendered back the check. The check was never presented to the bank, and was outstanding in the hands of Millett, the appellant, when the bank closed on April 10, 1928. Even if the son, Gregg, was not the agent of the appellant, the evidence is that the check passed into the appellant's hands and was retained by him or by his son. But the evi-

dence establishes that the son was the agent of his father. The father came to Bridgeport and ratified the act of the son. Together they called upon Miller. Neither returned the check or made any protest concerning it. It was not even mentioned at that conversation, and the son was instructed later, according to the testimony for the appellant, to return the check. The circumstances surrounding this one transaction are sufficient to establish the agency of the son to do what he did. It is argued that he might be the agent for one purpose, but not for another. The purport of this argument is that he may have been the agent for the purpose of receiving any money on the note, but was not authorized to accept the check as full payment of the note. However, this check was turned over to the principal, the father, and he did not even protest to Mr. Miller, nor return the check to him. The rule applicable is: "Where a purported servant or other agent has entered into a transaction with a third person, its ratification by the purported master or other principal has the same effect upon the liabilities of the third person to the principal as an original authorization." Restatement, Agency, sec. 319. *Furrer v. Nebraska Bldg. & Investment Co.*, 111 Neb. 423, 196 N. W. 680; *General Credit Corporation v. Moore*, 128 Neb. 881, 260 N. W. 368; *Lincoln Joint Stock Land Bank v. Bexten*, 129 Neb. 422, 261 N. W. 845. As applied to the present case, when the father accepted and kept the check, he ratified what his agent or servant had done in accepting it. Even when, according to his testimony, he instructed his son to return it, he made the son his agent for that purpose. It is a rule in this state that a principal may ratify what he could have authorized. See *Schneider v. Modern Woodmen of America*, 96 Neb. 545, 148 N. W. 334; *Standard Bridge Co. v. Kearney County*, 95 Neb. 455, 145 N. W. 986.

Did the check constitute payment of the note? The check was drawn for the exact amount due on the note and given to the son. The son, Gregg Millett, denies that he accepted the check in payment of the note. The note was not sur-

rendered then or afterwards. It is not clear where the note was at the time. The purpose for which the check was accepted is not stated in the evidence of the appellant. It is not explained why the appellant himself retained the check. On the other hand, when the bank closed the appellee was paid a dividend on the entire deposit, including the amount of the check. The dividend paid amounted to 37 per cent., and the appellee paid the appellant more than 37 per cent. of the amount of the check. It is stated that the parties were optimistic that more would be paid, and that accounted for the overpayment. The note was payable at the bank where the son worked. The payee of a negotiable note is not bound, except by agreement, to receive anything except money in payment thereof. See *Graydon, Swanwick & Co. v. Patterson & Co.*, 13 Ia. 256, and also *Smith v. Hobleman*, 12 Neb. 502, 11 N. W. 753. Whether the check in this case was given and accepted in payment of the note was a question of fact. The jury would determine this subject to the sufficiency of the evidence. The evidence supports the finding of the jury in this case that the check amounted to payment.

The verdict of the jury may depend in part upon the third proposition to be discussed. Was the check held such an unreasonable length of time as to amount to a payment of the note? This is perhaps the main issue in the case. The check was drawn and delivered to the son on April 4, 1928. The son called his father that evening, and the father and son later called upon Miller. The bank was not closed until April 10, 1928. There is evidence that Miller had on deposit, subject to check, more than the amount of the check. The son testifies that the bank did not have sufficient cash to pay the check, although there is evidence to the contrary. Anyhow, the check was never presented, and that is really the ultimate test of a bank's ability to pay. The appellant's interest in the bank was that he was a stockholder. His son worked in the bank and gave him information, according to the evidence, not available to Miller or the public generally. The check was kept all of the time

for his own purpose and convenience. To return the check or to present it at the time might have been to question the solvency of the bank, which the appellant apparently did not wish to do at that time.

The statutes of this state provide: "A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay." Comp. St. 1929, sec. 62-1603. This is a section of the negotiable instruments act which has been adopted generally throughout the United States. It has been held, both under this statute and at common law, that a check must be presented for payment within a reasonable time after issue or the drawer will be discharged from liability on the check to the extent of the loss caused by the delay in the event the bank closes because of insolvency. This is almost a statement of the statute. This court construed the statute in *Keenan v. McClure*, 125 Neb. 753, 252 N. W. 204, and held: "Checks are not designed for circulation as a medium of exchange, and should be presented for payment with dispatch and diligence consistent with the circumstances of the case and the transaction of other commercial business." In the same case the court also said: "Holder of a check must use due diligence in obtaining money, and must present it and demand payment within a reasonable time." This opinion was later withdrawn, and the case was decided differently; but the idea therein expressed was not disproved or changed, but is in fact sustained upon this point. *Keenan v. McClure*, 127 Neb. 466, 255 N. W. 784. Many years before this present statute was adopted, the rule this court held was that an ordinary check should be presented for payment with the dispatch consistent with the circumstances of the case and the usual mode of commercial business. *First Nat. Bank v. Miller*, 37 Neb. 500, 55 N. W. 1064. The rule there announced was followed in *Western Wheeled Scraper Co. v. Sadilek*, 50 Neb. 105, 69 N. W. 765. Therefore the rule is and has long been in this state that an ordinary check is not for circulation as a

medium of exchange, but must be presented for payment within such reasonable time as is consistent with the circumstances of the case and the usual method of business transaction.

But this is not an action on a check, but upon a note which is claimed to have been paid by a check. The note was past due and there are no rights of a holder in due course intervening. The question is whether the appellee was indebted to the appellant on the note. The appellant held the check in his possession from April 4 to April 10 without presenting it for payment. This is evidence that by the retention over such a long period of time he accepted the check as payment of the note, but also that he did not present it within a reasonable time. He was near the bank on which the check was drawn, and in the ordinary course of business the check would have been presented. There is no good and sufficient reason why he should have retained the check and not presented it for payment during this time. The overwhelming weight of authority required him to do this. There is no apparent reason why this was not done. The judgment of the district court is the correct one.

AFFIRMED.