GEORGE G. DYCK, APPELLEE, V. MABEL C. WILLIAMS SNYGG, APPELLANT.

292 N. W. 119

FILED MAY 17, 1940. No. 30818.

*Carl F. Benjamin,* for appellant.

*Abrahams, McGrath & Frenzer, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

This is an appeal in an equity action by George G. Dyck, plaintiff and appellee, against Mrs. Mabel C. Williams Snygg, defendant and appellant, to rescind a contract for the exchange of properties, and to set aside deeds which had been delivered. Court found for plaintiff Dyck, and that he was induced to convey his property by fraudulent representations made by E. G. Severin, who was agent of, and acting for, Mrs. Snygg. Directed that the contract be set aside and deeds canceled.

Prior to the filing of the petition in this case, Mrs. Snygg had brought an action at law against Mr. Dyck because of his failure to carry out the terms of his contract to furnish her a piece of property free and clear of all encumbrances.

In the answer filed by Dyck in the law action, practically the same allegations were made as in the petition filed by him in the case at bar. The trial judge decided to try the two actions together in the district court, a jury being waived, and Mrs. Snygg finally dismissed the law action for damages, and the decree was entered in the equitable action for rescission.

The petition in the case at bar alleges that on September 9, 1938, a contract was entered into for the exchange of properties, which provided that the plaintiff agreed to purchase the Snygg property, being lots 1 and 2, block 6, Patrick's Second Saratoga Addition to the city of Omaha, located at 5004 North Twenty-second street, said property being subject to a first mortgage not to exceed $2,000, and agreed to pay for the same by conveying to Mrs. Snygg lots 116 and 117, Kenwood Addition to Omaha, also known as 3542 North Thirty-seventh street, and to assume a mortgage of not to exceed $2,000, the rents and interest on the two properties to be adjusted at the time the transaction was closed at the office of E. G. Severin, and plaintiff paid $1 down to bind the bargain. The next day Mrs. Snygg signed a statement at the bottom of the contract, as follows:

"September 10, 1938

"I, or, we, hereby accept the above proposition on the terms above stated, and agree to deliver and convey said premises, and perform all the terms and conditions above set forth, and pay the regular commission of 5% on sale price.

"Mabel C. Williams Snygg."

The defendant in her answer and cross-petition admits entering into the contract, and admits that the deed was tendered to her; admits that the plaintiff requested defendant to reconvey to him his property, and denies the other allegations. For a cross-petition defendant alleges that she is an unmarried woman; that following the execution and delivery of deeds the respective grantees entered into possession of the respective properties, and have ever since remained in possession thereof; that the defendant,

after receiving a deed signed only by the plaintiff, demanded a conveyance or release of the inchoate right of inheritance of plaintiff's wife; that plaintiff has failed and refused to obtain a conveyance or release of the right of his wife in said property, and thereby the plaintiff has breached the contract, such inchoate right of inheritance owned by plaintiff's wife being an encumbrance upon the property, and in said contract plaintiff had specifically agreed to convey to the defendant his property free and clear of all encumbrances; that by reason of the aforesaid breach of contract defendant cannot convey a good title to said property, and has been damaged in the sum of $1,250, no part of which has been paid, for which amount she prays judgment in her cross-petition.

The court ordered that the cross-petition of the defendant be dismissed without prejudice, finds that the allegations of plaintiff's petition are true, and that plaintiff was induced to enter into the contract for the exchange of real estate by means of fraud and misrepresentation of the defendant's agent, E. G. Severin, who was at all times the agent of, and acted for and on behalf of, defendant Mrs. Snygg, and that said agent represented to the plaintiff that the premises were in good repair, first-class condition, and made other false representations to plaintiff with reference to the condition of the real estate. The court finds that plaintiff relied upon said misrepresentations at the time he signed the contract, and also at the time he executed and delivered the deeds and completed the contract.

The court further found that the statements made by defendant's agent were untrue; that the house was not in a good state of repair, but had settled; that the floors were not level, that the house was improperly wired for electricity, and that the beams supporting the house were defective.

The court further found that, immediately upon discovering the defective condition, plaintiff informed defendant, and immediately offered to rescind the contract and reconvey defendant's premises to her on the condition that she would reconvey plaintiff's property to him, but defendant

failed and refused to agree to the rescission of the contract and the cancelation of the deeds. It was therefore ordered by the court that each of the deeds be canceled, rescinded, and set aside, and that the title to the premises be quieted in Mabel C. Williams Snygg, subject to encumbrances of record and a foreclosure proceeding now pending with reference to said premises. It was further ordered that plaintiff Dyck repay to the defendant, Snygg, the sum of $69.81, which was the cash paid by the defendant to the plaintiff at the time of the delivery of the deeds as an adjustment of the rentals on both properties.

Motion for new trial being overruled, supersedeas bond in the sum of $500 was furnished, and defendant appeals from the decree of the court.

Plaintiff Dyck testified that he was 53 years of age, and that Marie V. Dyck, who was 55 years old, is his wife; that they reside at 5102 North Twenty-second street, Omaha. He says Severin came to him with a contract already drawn up, stating that the Snygg property was worth $4,500, and that he was to trade in his house and assume a mortgage of $2,000; that the house was in good repair, except the south wall, which would need 100 pounds of cement to repair the stucco.

Mr. Dyck testified that they hurried through the house so as not to disturb the tenants, as he would want them to stay; that the basement was badly lighted, with only one ceiling light, and he took it for granted that it was all right; that he signed up the contract on September 9, 1938; that the next day, Saturday, September 10, Severin called him by telephone, and Dyck told him, "You better call it off. My wife does not want this house, and we cannot go through with the deal."

Mr. Dyck testified that on Monday he went through the house again, as he had before, but took everything for granted, and did not see the defects, and on Tuesday, September 13, Dyck signed up the deed, but his wife never signed.

On September 14 Dyck took Roy Herman over and they

patched the stucco spots, using a whole sack of cement. He then noticed that the floor was "saucer-shaped," that the beams in the basement were all rotted out, with new boards put in front of the beams, that the electrical connections were just temporary extension lines.

Plaintiff Dyck admits that he examined the ceilings to determine if the house had settled, but, because the ceilings and walls had been newly papered, the fact that the house had settled was not apparent to him; that the fact that the floors were slanting and sagged was not noticed by him, due to the way in which the furniture and rugs were placed about the room.

Plaintiff testified that the next morning, after patching the stucco, at 8 o'clock he was waiting for Mrs. Snygg at her place of business when she came to work, and told her what he had discovered, and that he wanted to rescind the contract and give her back her property if she would reconvey his to him, and at the time she said that she too was dissatisfied, but later changed her mind and refused to reconvey.

Mrs. Snygg paid to Severin his entire commission of $275, and the testimony indicates that Severin misrepresented the income of the Dyck house to be $20 a month when as a matter of fact it was but $18 a month.

E. G. Severin, a young man who has his real estate office in his home, and has been in the business since 1934, testified that he sold plaintiff Dyck the little house on North Thirty-seventh street in 1936, and thereafter Dyck asked him to dispose of it, and he offered him several trades, which were not completed. Severin's testimony is that, as soon as he heard that the Snygg house could be traded, he went right up and took Mr. Dyck over to look at it. Dyck examined the house thoroughly, and talked to each of the tenants who were at home, went into the basement, and inspected the basement thoroughly after Mr. Severin got an electric light bulb from one of the tenants. In one room where the floor sloped, Dyck asked Severin to look at it, and said it had settled, and Severin told him, "Well, it is a cinch

that a house this age is not going to settle any more," and Dyck said, "He guessed there was something to that." Severin said, "I knew nothing of the place, and neither did he," except "he knew more about it because he lived close to it for such a length of time." Dyck asked Severin whether he was to make the offer to her, or *vice versa*, and asked if it would help any if he made the offer to her. Severin believed it would, and went home and drew the contract and brought it back, and Dyck signed it on September 9. "Q. Did you make any representations to Mr. Dyck relative to the income of the house? A. I did before we went over there, in this way, I said: 'I have not—I don't know the owner; I have never met her, but the party that told me about it says that she is getting $65 a month, and she is living in one apartment.' Everything that was said was said in the house when Mr. Dyck and I was there. He said, 'If I trade this for my small house, I am going to cut this into smaller apartments.' He said, 'I should get at least $125 if I build in some smaller apartments.' And he gave me his figures; he thought it would cost him $2,000 in order to do what he would do in order to make it into those apartments. My estimate of the thing was that it would cost that much."

Severin testified on cross-examination that a Mr. Lycan, of the Midwest Company, told him that he thought Mrs. Snygg would probably sell her property, and without any authorization of any kind from her he went and brought Dyck down to show him the house, as Dyck had told him on numerous occasions to be on the lookout for something.

The plaintiff argues that, after Mrs. Snygg discovered that Severin had sold her house by fraud and misrepresentation, she took advantage of the fraudulent statements of her agent, and refused to deed back the place. Plaintiff insists that the law of Nebraska is that a purchaser has a right to rely upon statements made to him by an agent of the seller as to the condition of the real estate, where the defects are concealed and hidden so that they cannot be observed by an ordinary inspection, providing the purchaser

offers to rescind as soon as he learns of the defects. Plaintiff also contends that, where misrepresentations are made by an agent who is subsequently employed, the principal thereby adopts the statements of the agent, ratifies them, and is bound by them, citing *Foley v. Holtry*, 43 Neb. 133, 61 N. W. 120; *Brucker v. Kairn*, 89 Neb. 274, 131 N. W. 382; *Martin v. Hutton*, 90 Neb. 34, 132 N. W. 727; *Furrer v. Nebraska Bldg. & Investment Co.*, 111 Neb. 423, 196 N. W. 680; *General Credit Corporation v. Moore*, 128 Neb. 881, 260 N. W. 368.

This appeal presents a controlling issue of fact. It is difficult to agree with the findings of the lower court if any weight at all is given to the evidence of the young real estate agent, E. G. Severin. We doubt if his testimony is impeached upon any material point.

Let us examine a few of the conflicts in the evidence. Mr. Dyck swears that Severin brought him the contract filled out, all ready to be signed. Severin's testimony is that, after they had examined the Snygg house, Dyck asked, in effect, whether it would not be better, in closing the deal, to have Dyck sign a contract, making the offer to Mrs. Snygg, and Severin thought that would be best, and went to his office, wrote up the contract, returned, and Dyck signed it. Would it not be most unusual for a real estate agent to go to see a mere prospect and take along a completed contract?

The implication of plaintiff's testimony is that Severin knew and concealed many things about the house in the interest of Mrs. Snygg, but her evidence positively confirms Severin's testimony that he received a tip from a Mr. Lycan that she might be willing to sell the place, and on that mere tip he rushed to see his prospect, Dyck, and the first time he ever met the owner was Friday night, when Mr. Lycan brought him to see her, when he produced for her examination the contract Dyck had already signed to trade places, and which she did not accept until after she had first gone and looked at Dyck's little house, and then Saturday noon she accepted Dyck's written offer.

The petition charges that Severin, as agent, represented

to Dyck that the premises were in good repair, first-class condition, recently reconditioned, and it would not be necessary to spend any money on the premises.

The evidence shows that Severin saw the place that morning for the first time, while Dyck had been living just one block away from it for 18 years. Dyck was 53 years old, and had bought and sold real properties for some years. Portions of the conversations between Dyck and Severin, as Dyck examined the Snygg house from top to bottom, have been set out hereinabove, and it is evident that Dyck was in no manner prevented from making any inspection of the house which he desired to make. Should Dyck not have asked himself why new boards were tacked over a sill in the basement? Is his statement that the arrangement of rugs or furniture concealed the fact that a floor was not level to be accepted? No; it is more plausible that Dyck observed, and mentioned to Severin, the sag in the floor, as set out above.

Exhibit No. 2, written by Dyck on his own letterhead, shows a definite knowledge of rentals, taxes, and interest of the two properties, and reads as follows:

"George G. Dyck, Public Accountant
"5102 North 22nd St., Omaha
"Payments due Mr. Dyck
"15.00 Rent from Mrs. Pope
2.50 " " Russell "
81.92 Taxes due on property 5004 No. 22nd St
15.00 half month payment on Mr. Lougee Loan

114.42 Total
"Payments due Mrs. Mabel Snygg.
"29.61 Taxes on #3543 No. 37th as per statement
15.00 Rent " " " " for rent from Sept 15 to
Oct 10
44.61 Total

$69.81 Difference payable to Dyck"

To maintain an action for fraudulent representations, it is not only necessary to establish the telling of the untruth, knowing it to be such, or that it was told without knowledge

of the facts, but also to prove that the plaintiff had a right to rely upon it, and did so rely, and altered his condition because thereof, and suffered damages thereby. *Runge v. Brown,* 23 Neb. 817, 37 N. W. 660; *Stetson v. Riggs,* 37 Neb. 797, 56 N. W. 628; *Upton v. Levy,* 39 Neb. 331, 58 N. W. 95; *Peterson v. Schaberg,* 116 Neb. 346, 217 N. W. 586.

"Actionable fraud may not be predicated on the expression of a mere opinion as to value, honestly made under circumstances that do not give another the right to rely thereon." *Leichner v. First Trust Co.,* 133 Neb. 170, 274 N. W. 475.

Statements about the amount of the rentals could have been checked by Dyck, as he visited each of the tenants in each apartment.

"A purchaser of land, to justify a rescission on account of a misrepresentation, must show in some manner that it was material and misled him to his injury and damage." *Realty Investment Co. v. Shafer,* 91 Neb. 798, 137 N. W. 873.

"Misrepresentation of the value or condition of real estate in order to be remedial must have been made under such circumstances that the injured party had a right to rely thereon." *Musgrove v. Eskilsen,* 127 Neb. 730, 256 N. W. 883.

"The general rule is that, where ordinary prudence would have prevented the deception, an action for the fraud perpetrated by such deception will not lie." *Osborne v. Missouri P. R. Co.,* 71 Neb. 180, 98 N. W. 685.

In the opinion of the court, the plaintiff has not supported by sufficient evidence the facts which entitle him to a rescission of his contract and deed. The decree of the trial court is clearly against the weight of the evidence, and is contrary thereto. The decree is set aside and the cause remanded.

REVERSED.