JOHN B. OSBORNE v. MISSOURI PACIFIC RAILWAY COMPANY.

FILED FEBRUARY 17, 1904.    No. 13,235.

1. **Action: FRAUD.** The general rule is that, where ordinary prudence
would have prevented the deception, an action for the fraud per-
petrated by such deception will not lie.

2. **Personal Injuries:** Release: Estoppel. A party who, having the capacity and opportunity to read a release of claims for damages for personal injuries signed by himself, and not being prevented by fraud practiced on him from so reading it, failed to do so, and relied upon what the other party said about it, is estopped by his own negligence from claiming that the release is not legal and binding upon him according to its terms.

Error to the district court for Douglas county: Lee S. Estelle, Judge. *Affirmed.*

*Connell & Ives* and *John Q. Burgner,* for plaintiff in error.

*B. P. Waggener, James W. Orr* and *John F. Stout,* contra.

Oldham, C.

In this action the plaintiff in the court below, who is also plaintiff in error in this court, filed a petition in the district court for Douglas county, Nebraska, alleging that, while in the employ of the defendant railway company as a switchman in its yards at Omaha, he received serious personal injuries caused by the negligence and carelessness of defendant. It is not necessary to review the petition further than to say that, on its face, it stated a good cause of action. Defendant answered this petition, denying all the allegations of negligence, and pleaded, by way of accord and satisfaction, the payment of $200 to the plaintiff in settlement and full satisfaction of all injuries received on account of the accident, and the execution of a release in writing signed by the plaintiff and delivered to defendant at the time of the settlement. It is not necessary to set out at length the release, but sufficient to say that, on its face, it shows a perfect accord and satisfaction of the injuries sued for. Plaintiff, by way of reply to the plea of accord and satisfaction contained in defendant's answer, alleged, in substance, that he signed the release alleged in defendant's answer, and that he had received $200 at the time stated, but, that his signature to the re-

lease was procured by fraud and misrepresentation; that
after he had recovered from the injury he applied to de-
fendant's superintendent at Omaha for further employ-
ment; that the superintendent informed him that he had a
position for him, but that it was necessary for all em-
ployees who had been injured, to go to the general office
at St. Louis and see one Jones, from whom the superin-
tendent at Omaha would be authorized to give him further
and continuous employment. That pursuant to these di-
rections, the plaintiff went to St. Louis and called upon
the said Jones, who was the general claim agent of de-
fendant; that Jones thereupon represented to him that he
could use his services, and that there was a vacant place
ready for him at Omaha, of which fact he had just been
informed by a telegram from the superintendent at
Omaha, and said he would allow plaintiff $2 a day for 100
days' services, the amount of time he had lost on account
of his injuries, but not as damages, because defendant was
not liable to plaintiff at all for the injuries. That Jones,
thereupon, prepared the papers which he said were to that
effect, and stated that the signing of the papers would
provide plaintiff with all the employment desired. And,
quoting now literally from the reply: "Thereupon, plain-
tiff believing said representations made as hereinbefore
set forth to be true, and relying upon the same, signed his
name to such papers as the said Jones directed, but with-
out reading over the same or hearing them read, or know-
ing the contents thereof otherwise than stated by said
Jones, as aforesaid; and plaintiff avers, that he was caused
to believe and rely upon said representations, and to sign
said papers in manner aforesaid, partly, by undue in-
fluence exercised upon him by said Jones, he, the said
Jones, having acquired plaintiff's implicit confidence, pur-
posely and with the intent, as plaintiff believes, of gaining
improper advantage thereby." Plaintiff then alleges, that
after his return from St. Louis in March, 1895, he applied
to defendant for employment, and was put off from time
to time until July, 1895, when he was given employment

either all or part of the time until February, 1896, when, without notice or just cause, he was discharged from defendant's employ. The reply further sets out, that the consideration on his part for signing the agreement was the promise of defendant to furnish him permanent employment in its service. It further sets out, that if the court and jury deem it proper they may take into consideration the $200, received in part payment of defendant's liability. After the filing of this reply, defendant moved for judgment on the pleadings. Pending the hearing of this motion and before judgment sustaining the motion was entered, plaintiff asked leave to file instanter an amended reply which, however, did not materially change the allegations as to procuring his signature to the written release. The court denied the request to file an amended reply, directed a judgment for defendant on the pleadings, and plaintiff brings error to this court.

The sustaining of the motion for judgment on the pleadings concedes the truth of every fact well pleaded in plaintiff's reply. The question then arises, do the facts pleaded sufficiently excuse plaintiff's neglect to read, or have read to him, the release which he signed before accepting the $200?

The general rule is that, where ordinary prudence would have prevented the deception, an action for the fraud perpetrated by such deception will not lie. Now, construing liberally the allegations of the reply which charge fraud in procuring the signature to the release, they are that plaintiff desired permanent employment with defendant; that he was led to believe from a conversation with defendant's claim agent that, on signing the release tendered him, he would get $200 for his lost time, and permanent employment in defendant's service. The reply does not allege that plaintiff could not read and write, and in fact the record clearly shows that he could, for his name is signed twice in his own handwriting to the release. It is not alleged that, by reason of failing eyesight, or by reason of any disability, he asked the defendant's agent to read

the paper to him; nor is it claimed that he was too ignorant of the language to understand the purport of the release, had it been read to him. We can not find any case that goes so far as to relieve one from the effects of a written contract, which is signed by a person of ordinary intelligence who can read and write, and who, presumably, would know the contents of the instrument if read to him, where no art or deception was practiced upon him to prevent his reading of the contract, or having it read to him, before the signature was obtained.

The rule permitting release from signatures obtained by fraud has been as liberally construed in this jurisdiction as it has by any other courts of last resort in these United States, and we will notice briefly some of our own decisions on this question:

In *Cole Brothers & Hart v. Williams,* 12 Neb. 440, the defendant had signed a contract for certain lightning rods, which were alleged to have been represented as of a stipulated price. Defendant could read and write, but had not his glasses with him, and requested plaintiff's agent to read the terms of the contract. This the agent did, and misstated the price to be charged for the lightning rods. Other witnesses were present and testified to the transaction. Under these conditions, defendant was released from the contract because of the fraud perpetrated in procuring his signature.

In *Ward v. Spelts & Klosterman,* 39 Neb. 809, the defendant could neither read nor write, and alleged that his signature to a memorandum in writing was procured by fraudulent representation as to what the paper contained. This he was permitted to show.

In *Woodbridge Brothers v. De Witt,* 51 Neb. 98, the signature of the agent of defendant was procured to a bill of conditional sale, which was to operate as a chattel mortgage on a musical instrument purchased, and which provided for the payment of 10 per cent. interest per annum on deferred payments; this after the contract for the purchase had been fully made, and when plaintiff's agent was

leaving the store after having made the purchase, . In this case the agent, presumably, could read and write, and signed the paper with the last name, only, either of herself or her principal, who was her son, on the representation of the member of the firm that it was nothing but a formal matter to complete the sale. Here, the defendant was relieved because of the artifice and deceit practiced in procuring the signature, which claim was corroborated by the manner in which the name was signed.

In the very recent case of *New Omaha Thompson-Houston Electric Light Co. v. Rombold*, 68 Neb. 54, the plaintiff was permitted to be relieved from his signature to a release similar in substance to that pleaded in the suit at bar, by a clear preponderance of the evidence that the receipt had been misread to him when his signature was obtained. While the judgment first rendered in this case was reversed on a rehearing on January 6, 1904, this portion of the opinion was not reversed, and is still of judicial weight in the determination of this question. But in this case, the agent of defendant purported to read the written instrument to the plaintiff, and procured his signature by deception in misreading the contents of the paper signed.

As before stated, we think our court has gone to the extreme length in the cases commented upon, in relieving from contracts and settlements signed without reading, or having the same read, before affixing the signature; and, still, all these cases depend on facts, both alleged and proved, that tend to show imposition and deceit resorted to for the purpose of procuring the signature.

Now, in the case at bar, we do not think the facts alleged in the reply, or amended reply tendered, stated facts which showed such artifice and fraud to have been practiced upon the plaintiff as would excuse him from either reading the release which he signed, or asking to have it read to him, before signing it.

It appears from the record that the injury to plaintiff was received on November 9, 1894; that the settlement was made and the $200 paid to plaintiff on the first day of

March, 1895. It also appears from the allegations in the reply that plaintiff was employed by defendant part of the time during the years 1895 and 1896 following the settlement; and, yet, this suit was not instituted, nor was any claim made against the company by defendant, until November 5, 1898, or four days before the statute of limitations would have barred the claim. Such apparent laches on plaintiff's part in asserting his claim may, with much propriety, have influenced the trial judge in sustaining the motion for judgment on the pleadings.

In *Wallace v. Chicago, St. P., M. & O. R. Co.*, 67 Ia. 547, it is held that a party who, having the capacity and opportunity to read a release of claims for damages for personal injuries signed by himself, and not being prevented by fraud practiced on him from so reading it, failed to do so, and relied upon what the other party said about it, is estopped by his own negligence from claiming that the release is not legal and binding upon him according to its terms. Of like effect is the holding in *Muteer v. Missouri P. R. Co.*, 105 Mo. 320; *Lumley v. Wabash R. Co.*, 71 Fed. 21.

It is therefore recommended that the judgment of the district court be affirmed.

HASTINGS and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.