EMIL FALKNER, APPELLEE, v. SACKS BROTHERS, A COPARTNERSHIP, ET AL., APPELLANTS.

30 N. W. 2d 572

Filed January 9, 1948.   No. 32213.

*Abrahams, Kaslow & Carnazzo,* for appellants.

*Gross & Welch,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LANDIS, District Judge.

MESSMORE, J.

This is an action at law for damages for alleged fraudulent misrepresentations made by the defendants to the plaintiff upon which he relied and was thereby induced to purchase the tractor portion of a tractor-trailer combination.

The plaintiff's amended petition, insofar as need be considered in this appeal, alleged in substance: That the defendants fraudulently represented to the plaintiff that the tractor which they offered for sale and which was purchased by the plaintiff was a White, model No. 718, 1938 tractor, when in fact it was a White, model 1936 tractor; further alleged that the defendants represented orally to the plaintiff that the tractor had been overhauled and placed in good mechanical condition and was in good and proper working order, when in fact the tractor was not in good mechanical working condition for the reason that the transmission was worn and defective and caused the tractor to break down on its first trip, the motor was defective in that the sleeves would not work and had to be replaced, and the motor was cracked and would not develop compressed power

thereby rendering the tractor incapable of developing adequate pulling power; and that by virtue of the false and fraudulent representations so made by the defendants, the plaintiff had been damaged in the amount of $1,513 and costs.

The defendants' amended answer alleged, in substance: That the motor tractor was acquired in the course of trade or business from a prior owner and, by an error appearing in the certificate of title, the defendants were led to believe that it was a 1938 tractor instead of a 1936 tractor; that the plaintiff purchased the tractor on June 26, 1944, in the course of trade or business and for use by him in his business; that upon discovery of the mistake in the year the tractor was manufactured, defendants tendered the difference in the ceiling price between a 1938 tractor of the same make, and a 1936 tractor, which at the time of the purchase by the plaintiff was governed by federal regulations, in the amount of $233.20, which was refused. Defendants further alleged that subsequent to the purchase of the tractor by the plaintiff it was returned to them for service and repairs which defendants made voluntarily, at their expense; further, that if there was an overcharge for the tractor it was not willful nor the result of failure to take practicable precautions against the occurrence thereof; and denied generally the affirmative allegations of the plaintiff's amended petition with reference to alleged false and fraudulent representations alleged to have been made by the defendants.

The case was submitted to a jury, resulting in a verdict for the plaintiff in the amount of $1,513. Upon the overruling of the motion for new trial and judgment entered on the verdict, defendants appeal.

For convenience, the appellants will be referred to as defendants and the appellee as plaintiff.

The defendants contend that the evidence was insufficient to warrant submission of the case to the jury

on the question of false and fraudulent representations alleged to have been made by the defendants, as pleaded in plaintiff's amended petition. This assignment of error necessitates a review of the competent and relevant evidence as disclosed by the record.

The plaintiff testified, in substance, that by virtue of a newspaper advertisement he learned the defendants were offering for sale a 1938 White truck. In June 1944, pursuant to the advertisement, he contacted the defendants. One of the defendants informed him that they had such a tractor for sale, and that it was being worked on by the White Motor Company, the manufacturers of White trucks; that the price would be $1,850, which included a spare, and fixing the cab and the glass contained in the tractor; that the plaintiff would have to wait for approximately three weeks, or until the tractor was properly repaired, at which time it would be in A-1 mechanical condition. The plaintiff contacted this same defendant on two occasions and finally purchased the tractor as a 1938 tractor, paid the amount of $1,850 for it, and it was then represented to him that the tractor was ready to go, and was in A-1 mechanical condition. The plaintiff had engaged in driving a truck for a period of five years, but entered this tractor in a business new to him, that of hauling gasoline. The tractor was unable to develop power, and later the transmission and clutch went out. The clutch was replaced, the work being done by the plaintiff. On other occasions the tractor would not develop power and the plaintiff was obligated to replace the worn-out universal joints. He, on occasions, informed the defendants of such facts with reference to the failure of the tractor to develop power, the parts that he was obliged to replace, and the work and expense that he was put to. The tractor had developed three cracks in the motor block. The defendant offered $800 for the tractor. Finally, when it broke down in Kewanee, Illinois, in the latter part of November 1944, its value was placed at $500.

It appears from the evidence that in March 1944, the defendants sold the same tractor to another party under a guarantee that it would be satisfactory, and sold it as a 1938 model which was the only way that such party could purchase it. The tractor developed mechanical trouble in that it did not have sufficient power to pull the load it should for the size of the tractor. The purchaser was losing money on it and contacted the defendants with reference to taking the tractor back. He told the defendants that he thought it was an older model than a 1938, and they said that was all right, they would sell it as a 1938, and that is what it was. He was offered $450, and later induced the defendants to return the full purchase price of $1,850 and take the tractor back. He found papers in the tractor to show that it was a 1936 model.

There is evidence of a mechanic who fixed the cracked motor block in the tractor in August of 1944, for the plaintiff.

Another mechanic testified that in 1944, he had occasion to inspect the tractor and to work on the motor for the plaintiff in the latter part of October or the fore part of November. The motor had thrown a rod, and he installed one sleeve into it. The motor block was cracked.

A driver for the plaintiff testified that he made a trip to Chicago to pick up the tractor where it was stranded, and was directed to bring the tractor back. He was hauling a load of tires, 23,000 pounds gross weight. The tractor lost power and completely broke down in Brooklyn, Iowa. The head gasket went out, and the motor would not run, and filled up with water which got into the number three and four pistons. He told of other trouble with the tractor, and that he was with the plaintiff when the plaintiff endeavored to make a deal with the defendants by trading for another tractor.

The plaintiff purchased the tractor on June 26, 1944. The certificate shows the make to be a White, 1938,

model 718 tractor, the price $1,850. It developed that the tractor was in fact a 1936 White model tractor. There was a mistake made on the certificate of title in the county clerk's office, with reference to the year in which the tractor was manufactured. This matter was called to the defendants' attention and they thereafter endeavored to make up the difference in the ceiling price as governed by federal regulations at the time, of a 1936 model White tractor and a 1938 model White tractor.

The defendants' testimony is to the effect that the plaintiff talked to the master mechanic for the Watson Brothers Transportation Company who owned the tractor and sold it to the defendants, seeking information with reference to the tractor, as he had in mind the purchase of it. He informed the plaintiff of his knowledge of the tractor. He further testified that he supervised the last repair of the vehicle, putting a sleeve in the motor block, and reboring the motor to 20 oversize. The motor block was not cracked at that time.

It also appears from the testimony of the service manager of the White Motor Company that the tractor was a White model 718. The company had manufactured this particular model for a period of six years, and the model 718 manufactured in 1936 was of the same construction as the one manufactured in 1938, and that one could not tell in what year the tractor was manufactured by just examining or looking at it, but had to go entirely by the motor and serial number. He further testified that repairs were put on the tractor for the purpose of placing it in mechanical condition for successful operation. We deem it unnecessary to set forth the repairs so made, except to say that they were not of the kind or nature that the plaintiff testified that he made subsequent to taking possession of the tractor. The plaintiff was in and around the tractor on several occasions, talked to the mechanics, and informed the witness there were additional things that he wanted done, such as tightening the steering bracket. He

checked on the brake lining, and the steering bracket was tightened after the White Motor Company got permission to do so from the defendants. The plaintiff then took possession of the tractor. The motor block was not cracked; the tractor had been worked on on two occasions and the charge was made to the defendants. The last work included the installation of an air compressor, the renewal of oil lines, the repair of some light wiring, and the installation of a taillight, a horn, and a starting motor. This witness also testified that it is impossible to tell the year a truck is manufactured by looking at it. This testimony is corroborated by the parts man employed by the White Motor Company who observed the plaintiff visiting the White Motor Company on several occasions.

One of the defendants testified that the partnership engaged in selling trucks, busses, and used parts; that the tractor in question was obtained from the Watson Brothers Transportation Company and was in good condition; that at the time of purchase, the title read "1938" and that was the basis of their purchase; that the plaintiff came to their place of business on numerous occasions and was fully advised with reference to the tractor, and was told to check on it for his own information; that at no time was a statement made by the defendant to the plaintiff that the tractor was in A-1 working condition.

Another partner of the defendants testified that the tractor had been returned by a prior owner; that he was present with the plaintiff at the White Motor Company once or twice; that the plaintiff went up to the tractor, was privileged to make any inspection he wanted to of it and in fact did inspect it, and no representation was made by this witness that the tractor was in A-1 mechanical condition.

A witness acquainted with tractors of the model of the one in question, and with the tractor in question,

testified that its value, without considering the ceiling price, would be $1,600 at the time it was sold.

The plaintiff denies that he ever inspected the tractor or ever saw the tractor with the head off of the motor, as claimed by the defendants, and did not know that the motor block was cracked.

Having in mind the first assignment of error as heretofore set out, the question presented is whether or not the plaintiff met the burden of proof by a preponderance of the evidence with respect to the essential elements constituting fraud and deceit.

This court, in Campbell v. C & C Motor Co., 146 Neb. 721, 21 N. W. 2d 427, announced the following rule: "To maintain an action for damages for false representation the plaintiff must allege and must prove what representation was made; that it was false and so known to be by the defendant charged with making it, or else was made without knowledge as a positive statement of known fact; that the plaintiff believed the representation to be true; and that he relied on and acted upon it, and was thereby injured."

In this connection, the evidence shows that the defendants represented the tractor to be a White 1938 model, while in fact it was a 1936 model. This representation was made to the plaintiff, and was also made to a previous purchaser of the tractor. The representation so made is a positive statement of fact which would require an investigation to discover the truth. Unquestionably the plaintiff had a right to rely upon the representation that this vehicle was a 1938 model White tractor.

As stated in Sic v. Loup River Power District, 136 Neb. 506, 286 N. W. 700: "A person is justified in relying upon a representation made to him in all cases where the representation is a positive statement of fact, and where an investigation would be required to discover the truth." See, also, Martin v. Hutton, 90 Neb. 34, 132 N. W. 727; Brucker v. Kairn, 89 Neb. 274, 131 N. W. 382;

Wineberg v. Baker, 123 Neb. 411, 243 N. W. 122.

The evidence shows that the tractor proved to be defective in a number of ways which has previously been outlined, and obviously there were latent defects which could not be discovered with ordinary prudence. The evidence fails to disclose that the plaintiff could have discovered that the transmission was defective, the clutch was worn out, or that the universal joints and drive shaft needed to be replaced, and that the air line was bad.

The defendants contend that, as set forth in Dyck v. Snygg, 138 Neb. 121, 292 N. W. 119, following Osborne v. Missouri P. Ry. Co., 71 Neb. 180, 98 N. W. 685, and as set forth in the body of the opinion in Welch v. Reeves, 142 Neb. 171, 5 N. W. 2d 275, the general rule is that, where ordinary prudence would have prevented the deception, an action for the fraud perpetrated by such deception will not lie. This rule has no application, for the defects were latent, as shown by the evidence in the case at bar.

There is a conflict in the evidence as to whether or not the cracked motor block and the defective sleeves, which are two specific defects, could only be seen or discovered when the head was off the motor. Defendants introduced evidence to the effect that the head had been removed. The plaintiff denies that he saw the cracked motor block or defective sleeves, or that the head was off the motor at any time; admits that he gave the tractor a casual examination.

"The general rule that fraud is not presumed, but must be proved by the party who alleges it, does not mean that it cannot be otherwise proved than by direct and positive evidence. Fraud in a transaction may be proved by inferences which may reasonably be drawn from intrinsic evidence respecting the transaction itself, such as inadequacy of consideration, or extrinsic circumstances surrounding the transaction. In fact, many of the elements of fraud are such as not to be susceptible

of proof by direct testimony. Fraud in its nature is not a thing susceptible of ocular observation or readily demonstrable physically; it must, of necessity, be proved in many cases by inferences from the circumstances shown to have been involved in the transaction in question." 24 Am. Jur., § 257, p. 89. See, also, Patton v. Rapp, 133 Neb. 308, 275 N. W. 315; Johnson v. Radio Station WOW, 144 Neb. 406, 13 N. W. 2d 556; Rettinger v. Pierpont, 145 Neb. 161, 15 N. W. 2d 393.

The defendants contend that the court erred in giving instruction number four to the jury. This instruction set forth the general rule as to the measure of damages in cases of false and fraudulent representations which in this jurisdiction is as follows: In a purchaser's action to recover damages for fraud in the sale he has the burden of proving the amount of his damages, and the measure thereof is the difference between the actual value of the property and its represented value at the time of the sale. See Young v. Filley, 19 Neb. 543, 26 N. W. 256; Smith v. Leu, 110 Neb. 297, 193 N. W. 703; Rankin v. Bigger, 128 Neb. 800, 260 N. W. 202. See, also, Welch v. Reeves, *supra*.

The principal objection raised by the defendants in support of their contention is that there is no competent evidence as to either the value of the tractor at the time of the sale or what its value would have been at the time if the tractor had been as represented. From an examination of the record, it is void of competent evidence sufficient to meet the requirement of the general rule in cases of this kind, as announced in instruction number four. The record discloses that there is some evidence of the value of the tractor approximately five months after the purchase and after the plaintiff had taken possession of it. This is too remote, in period of time, to meet the requirements of the general rule as hereinbefore announced.

The instruction contains the following language: "plus any reasonable expenses paid by the plaintiff in attempt-

ing to put said tractor in working condition." This language indicates that in a case of this nature special damages may be recoverable. We are not confronted with that question in this appeal, for the reason hereinbefore given in this assignment of error.

We conclude that under the evidence, instruction number four, given by the trial court, was prejudicially erroneous. We therefore reverse and remand the case for further proceedings.

REVERSED AND REMANDED.