FOXLEY CATTLE COMPANY, A NEBRASKA PARTNERSHIP, APPELLEE, V. BANK OF MEAD, A NEBRASKA BANKING CORPORATION, APPELLANT.

241 N. W. 2d 495

Filed April 28, 1976.   No. 40227.

(1)

Joseph Ginsburg of Ginsburg, Rosenberg, Ginsburg & Krivosha, for appellant.

John R. Douglas of Cassem, Tierney, Adams & Gotch, for appellee.

Heard before SPENCER, McCOWN, and BRODKEY, JJ., and MURPHY and COADY, District Judges.

COADY, District Judge.

The plaintiff, Foxley Cattle Company, a partnership and cattle feeding operation, sued the defendant, Bank of Mead, a banking corporation, on the theory that the president of the Bank of Mead made misleading statements, or misrepresented facts, and plaintiff obtained a jury verdict for damages in the sum of $227,850.71. The trial judge, after hearing and the taking of evidence, awarded prejudgment interest in the sum of $95,808.43. We affirm the total judgment of $323,659.14.

The evidence is summarized in this and the following five paragraphs. The United States National Bank of Omaha, Nebraska, notified the Bank of Mead on November 30, 1970, that Agri-Land & Beef, Inc., a corporation, cattle feeding operation and customer of the Bank of Mead, was overdrawn on its checking account in the approximate sum of $700,000. The effect thereof was that the Bank of Mead owed that amount to the United States National Bank. Mr. Schuette, president of the Bank of Mead, visited late that evening and on the morning of December 1, 1970, with Mr. Richter, president of Agri-Land & Beef, Inc. Mr. Schuette was told that Agri-Land would sell some cattle and he directed Mr. Richter to take the check to the United States National Bank.

During the morning of December 1, 1970, Mr. Richter went to the offices of plaintiff and met with the partnership's chief executive and buyer, Mr. Foxley. On prior occasions, Mr. Foxley had purchased cattle from Mr. Richter and Mr. Richter had custom fed cattle for Mr.

Foxley. On this date, the two entered into an agreement wherein plaintiff was to purchase 1,802 head of cattle located on the Nygren farm for $326,353.20. A hand-written memo was made by Mr. Richter which identified the cattle by purchase date, number, weight, and as steers. During the negotiations, Mr. Foxley communicated by telephone with Mr. Holstein who was the president of the South Omaha Production Credit Association. The testimony of Mr. Foxley and Mr. Holstein was in severe conflict as to whether Mr. Foxley was warned or put on notice that there might not be cattle free and available for purchase. Sometime during the morning, Mr. Foxley had a general discussion about the sale with Mr. Vervaecke, one of the owners of cattle also located on the Nygren farm.

About 12:30 o'clock p.m., Mr. Foxley called Mr. Holzafpel, plaintiff's office manager, to join Mr. Foxley and Mr. Richter. Mr. Foxley instructed Mr. Holzafpel to investigate the matter and to issue a check if everything was all right. Mr. Holzafpel placed a telephone call for Mr. Holstein, did not get him and then called Mr. Schuette at the Bank of Mead. Concerning that conversation, the testimony of these two witnesses was in severe conflict. By Mr. Holzafpel's account, Mr. Schuette suggested that Agri-Land owned cattle located on the Nygren farm, that he had been there that morning, that he had seen them, that title documents were at the United States National Bank, and that the cattle were free and clear of liens. By Mr. Schuette's account, Mr. Holzafpel was told that Mr. Schuette had driven by the Nygren farm that morning, that he saw cattle there, that the bank had no title documents, and that the bank had no liens on cattle there.

That same afternoon, Mr. Holzafpel did speak to Mr. Holstein by telephone. Again, these two witnesses severely disagreed. The two witnesses did agree that Mr. Holstein suggested that they go the next morning and count the cattle on the Nygren farm. Neither Mr.

Foxley nor Mr. Holzafpel made any additional investigation and a check for $326,353.20, drawn on the Omaha National Bank and made payable to the "Bank of Mead and Agri Land & Beef, Inc.," was given to Mr. Richter.

At 4 o'clock p.m., Mr. Schuette arrived at the United States National Bank, endorsed the check for the Bank of Mead, and the Bank of Mead's account was credited by the United States National Bank. Sometime during that afternoon, a vice president of the Omaha National Bank called Mr. Holzafpel to ask if the check should be honored and was instructed to cash the same.

The 1,802 head of cattle were never delivered to plaintiff. Plaintiff did recover $98,502.49 from Agri-Land which reduced plaintiff's claim for damages to $227,850.71.

The defendant's argument for reversal consists of four general areas: (1) That a rule of an ordinary and prudent cattle purchaser should apply to these facts and which it raised by three proposed instructions not given to the jury; (2) that the evidence was insufficient to prove that defendant made a material representation; (3) that the trial judge should not have awarded prejudgment interest; and (4) that defendant's objection to certain admission testimony should have been sustained. The issues will be discussed in that order.

A person is justified in relying on a representation made to him in all cases where the representation is a positive statement of fact and where an investigation would be required to discover the truth. The fact that plaintiff made inquiries elsewhere which did not disclose the falsity of the representations is no defense. The plaintiff is entitled to relief if the representations were a material inducement to the contract, although he may have made efforts to discover the truth thereof and did not rely wholly upon the veracity of defendant. Foley v. Holtry, 43 Neb. 133, 61 N. W. 120 (1894); Pasko v. Trela, 153 Neb. 759, 46 N. W. 2d 139 (1951). It is generally held that fraud may be predicated on false repre-

sentations although the truth could have been ascertained by an examination of public records. Linch v. Carlson, 156 Neb. 308, 56 N. W. 2d 101 (1952).

The defendant argues that its proposed instruction No. III should have been given by the trial judge. Its proposed instruction is based on the language of Nathan v. McKernan, 170 Neb. 1, 101 N. W. 2d 756 (1960), which states: "Where one is put upon inquiry, he is charged with notice of all of such facts as he would have learned by reasonable inquiry. . . . A defrauded party must be diligent and prudent in his effort to detect the fraud and means of knowledge are equivalent to knowledge." We have reviewed that case, and its antecessors, and find that such language has been applied to holdings on facts establishing theories of waiver or estoppel by reason of a statute of limitations and the doctrine of laches. Swanson Petroleum Corp. v. Cumberland, 184 Neb. 323, 167 N. W. 2d 391 (1969), repeats some of that language and the facts establish some elements of waiver or laches, but the holding is consistent with theories discussed in the following paragraphs. We decline to apply Nathan v. McKernan, *supra,* to the facts of this case.

In regard to defendant's proposed instruction No. IV, it urges us to insist that the jury should have been instructed that "where ordinary prudence would have prevented a deception an action for fraud perpetrated by such deception will not lie." Similar language has been used in numerous opinions published by this court and a proper analysis of the fact situations therein will develop two separate and distinct propositions.

Such an instruction may be proper in those cases where a person who relies on a misrepresentation does not need to make any additional investigation to discover a patent defect or the patent truth of the matter. Abbott v. Abbott, 188 Neb. 61, 195 N. W. 2d 204 (1972); Swanson Petroleum Corp. v. Cumberland, *supra*; Dyck v. Snygg, 138 Neb. 121, 292 N. W. 119 (1940); Osborne v. Missouri P. Ry. Co., 71 Neb. 180, 98 N. W. 685 (1904). The ordi-

nary prudence rule does not apply where the defects are latent. Maser v. Lind, 181 Neb. 365, 148 N. W. 2d 831 (1967); Falkner v. Sacks Bros., 149 Neb. 121, 30 N. W. 2d 572 (1948). A reading of other opinions concerning facts of latent defect will clearly demonstrate that we have consistently held that an unknowing person who relies on a material representation does not need to make an investigation, or additional investigation, to discover the truth. Mid-States Equipment Co. v. Evans, 191 Neb. 230, 214 N. W. 2d 496 (1974); Russo v. Williams, 160 Neb. 564, 71 N. W. 2d 131 (1955); Linch v. Carlson, *supra*; Pasko v. Trela, *supra*; Welch v. Reeves, 142 Neb. 171, 5 N. W. 2d 275 (1942); Foley v. Holtry, *supra*.

The trial judge instructed the jury that a person is justified in relying upon a representation where an investigation would be required to discover the truth. The main complaint of the defendant is that this instruction "is but one side of the coin." It is noted that the proposed instruction and the given instruction are subject to the same criticism. While we find it possible that some judge, some day, may write a more detailed instruction, it is our finding that the instruction was sufficient for the facts at hand.

The following facts of record, we think, are uncontested on the part of defendant: That Mr. Foxley and Mr. Holzafpel were told by Mr. Richter that he had 1,802 head of cattle for sale and located on the Nygren farm; that Mr. Foxley was told by Mr. Vervaecke that he was sure the cattle were clear; that Mr. Holzafpel had a conversation with Mr. Schuette; that Mr. Foxley and Mr. Holzafpel were told by Mr. Holstein that there might not be enough cattle on the Nygren farm, that he had liens on some cattle located there, and that they were owned by various persons; and that, in fact, there actually were hundreds, if not thousands, of cattle located on the Nygren farm. It would be fair to say that a mere trip to the Nygren farm would not have solved the problem. The cattle would have to have been count-

ed, identified, or separated according to the various owners. The nature and extent of liens would have to have been determined and the subject cattle identified. The jury did not and we do not find that the record discloses, in any way, a set of circumstances suggesting a patent defect or that the truth of the matter was at hand.

The defendant offered proposed instruction No. V which was drawn from sections 54-116 and 54-118, R. S. Supp., 1969, which were in effect on December 1, 1970. The language of the first section rather clearly talks about branded livestock and applies to purchasers. Although it is less clear that the language of the second section indicates it was intended as a brand law, this court has long ago said that these statutes were enacted for the protection of the owners of brands and were not intended to prohibit private sales or trades between individuals. Bendfeldt v. Lewis, 149 Neb. 107, 30 N. W. 2d 293 (1948). We note these sections were amended in 1971 and do not comment upon the effect thereof. We now hold that the purpose of section 54-116, R. S. Supp., 1969, was to afford protection to the owners of brands and not to protect those who make fraudulent misrepresentations.

As we understand defendant's argument, it asserts that the evidence was insufficient for the jury to find that Mr. Schuette represented to Mr. Holzafpel that Agri-Land owned the cattle about which Mr. Holzafpel inquired. The record contains evidence that Mr. Holzafpel had the memo written by Mr. Richter. Mr. Holzafpel testified, in summary, that in response to his inquiry, Mr. Schuette said he had seen the cattle that morning, they were there, documents were at the United States National Bank and they were free and clear of liens. The jury believed Mr. Holzafpel.

The award of prejudgment interest by the trial court was proper. Edquist v. Commercial Sav. & Loan Assn., 191 Neb. 618, 217 N. W. 2d 82 (1974); Schmidt v. Knox,

191 Neb. 302, 215 N. W. 2d 77 (1974); Abbott v. Abbott, *supra.*

William J. Brennan, an attorney representing plaintiff, called on Mr. Schuette at the Bank of Mead on December 4, 1970. He testified that he said, "You realize, Mr. Schuette, Foxley released a check for $325,000 based upon your conversation with Mr. Holzafpel?" and that Mr. Schuette answered, "Yes, I understand that." Defendant immediately objected thereto. Having the advantage of ample time to reflect upon the matter, we feel that the admission is largely meaningless and doubt that the opinion was helpful to the jury. We do not find the receipt of the testimony to be prejudicial as defendant's counsel, by cross-examination, ably and clearly established that neither Mr. Brennan nor Mr. Schuette were aware of enough of the uncontested facts herein to ask and answer such a question.

The judgment is affirmed.

AFFIRMED.