participation in the drug court program. We further reverse and vacate Workman's convictions and sentences, and we remand the cause to the district court for further proceedings. We need not address Workman's remaining assigned errors. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it. *State v. Merchant*, 285 Neb. 456, 827 N.W.2d 473 (2013).

## CONCLUSION

The district court erred in accepting Workman's pleas of guilty without the existence of a factual basis for the pleas. We therefore reverse the orders of the district court which accepted Workman's guilty pleas and terminated his participation in the drug court program, we reverse and vacate Workman's convictions and sentences, and we remand the cause to the district court for further proceedings to allow Workman to move to withdraw his previous pleas of guilty.

Judgment reversed, sentences vacated, and cause remanded for further proceedings.

---

Jeff Bott and Victoria Bott, husband and wife, appellants, v. Thomas L. Holman and Sharon A. Holman, husband and wife, appellees.

___ N.W.2d ___

Filed July 29, 2014.    No. A-13-301.

1. **Actions: Rescission: Equity.** An action for rescission sounds in equity.
2. **Equity: Appeal and Error.** In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a decision independent of the findings of the trial court. Where credible evidence is in conflict on a material issue of fact, the appellate court will consider and may give weight to the fact the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Actions: Fraud: Proof.** To maintain an action for fraudulent misrepresentation, a plaintiff must allege and prove the following elements: (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff reasonably did so rely; and (6) that the plaintiff suffered damage as a result.

4. **Fraud: Rescission: Proof.** The party alleging fraud as the basis for rescission must prove all the elements of the fraudulent conduct by clear and convincing evidence.

5. **Fraud.** A statement that is true but partial or incomplete may be a misrepresentation, because it is misleading when it purports to tell the whole truth and does not.

6. \_\_\_\_. When a party makes a partial or fragmentary statement that is materially misleading because of the party's failure to state additional or qualifying facts, the statement is fraudulent.

7. **Fraud: Proof.** To succeed on a claim of fraudulent misrepresentation, a plaintiff must prove not only a misrepresentation, but also justifiable reliance upon that representation.

8. **Fraud.** A party is justified in relying upon a representation made to the party as a positive statement of fact when an investigation would be required to ascertain its falsity.

9. \_\_\_\_. Nebraska law imposes a duty of ordinary prudence upon a party claiming fraudulent misrepresentation.

10. \_\_\_\_. In fraudulent misrepresentation cases, whether a plaintiff exercised ordinary prudence is relevant to whether the plaintiff justifiably relied on the misrepresentation when the means of discovering the truth was in the plaintiff's hands.

11. **Actions: Fraud.** The fact that a plaintiff made inquiries elsewhere which did not disclose the falsity of the representations is not, as a matter of law, a defense to a fraud action.

Appeal from the District Court for Scotts Bluff County: LEO DOBROVOLNY, Judge. Reversed and remanded for further proceedings.

Maren Lynn Chaloupka, of Chaloupka, Holyoke, Snyder, Chaloupka, Longoria & Kishiyama, P.C., L.L.O., for appellants.

Paul W. Snyder, of Smith, Snyder & Petitt, G.P., for appellees.

MOORE, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Jeff Bott and Victoria Bott brought an action for rescission of a purchase agreement they entered into with Thomas (Tom) L. Holman and Sharon A. Holman, based on allegations of fraudulent misrepresentation and fraudulent concealment. Following a bench trial, the district court for Scotts Bluff

County found insufficient evidence to establish the Botts'
claims and entered judgment in favor of the Holmans. The
Botts appeal from that judgment. Because we find that the
Botts proved all of the elements of fraudulent misrepresenta-
tion, we reverse the district court's order and remand the mat-
ter for further proceedings.

## BACKGROUND

In June 2011, the Botts entered into a purchase agreement
with the Holmans for the purchase of a home in Scottsbluff,
Nebraska. Shortly after moving in, the Botts hired a contractor
to install a heating and cooling system in the crawl space of
the residence. While working in the crawl space, the contrac-
tor discovered water damage on the floor joists and alerted the
Botts. Jeff Bott went into the crawl space and observed that
the floor joists in the northeast corner of the house were rotten,
crumbling, and moldy.

The Botts hired an engineer, Larry McCaslin, to conduct
a structural inspection of the home in September 2011. Upon
inspecting the crawl space, McCaslin observed a considerable
amount of damage in the flooring system. McCaslin observed
multiple floor joists that were cracked and rotten. Some of the
floor joists had rotted so severely that they no longer reached
the sill plate, and they were being supported by floor jacks and
shims. The insulation between the floor joists and above the
sill plate was deteriorated and black, and there was mold and
mildew throughout the crawl space.

A sill plate is a 1½-inch-thick piece of wood that sits on top
of the concrete foundation. McCaslin explained that the pur-
pose of the sill plate is to provide a smooth and level surface to
which the floor joists are attached and to transfer the load from
the floor joists down to the foundation. McCaslin observed that
the sill plate had completely rotted away in the northeast cor-
ner of the home, causing the floor joists to sit 1½ inches lower
in that area.

McCaslin noted damage in other areas as well, but the most
severe damage was in the northeast corner of the home. He
believed the damage was caused by moisture leaking into the
crawl space. McCaslin described the status of the flooring

system as "critical," and he stated that it needed to be repaired right away to make the house safe. McCaslin recommended replacing the sill plate, floor joists, and insulation, and regrading the site to direct water drainage away from the house, among other possible repairs.

The Botts hired a contractor to provide an estimate for the necessary repairs. The contractor explained that the house would have to be jacked up in order to replace the sill plate and floor joists. He estimated that the total cost, including materials and labor, would be approximately $72,000.

The Botts brought this action to rescind the purchase agreement on the basis of fraudulent misrepresentation and fraudulent concealment in the property condition disclosure statement provided by the Holmans. The evidence at trial established that the Holmans were aware of at least some of the damage in the flooring system and did not fully disclose their knowledge to the Botts.

The Holmans had owned and lived in the home since July 1989, prior to selling it to the Botts. During that time, there were multiple occasions in which water had leaked into the crawl space below the flooring system. There had been a washing machine leak in the southwest corner of the house in 1989, a leak in the shower drain in the northeast corner of the house in 1993 and 1994, and a leak in a water line on the north side of the house in 1997. In addition to those plumbing leaks, there had been water leakage around the foundation into the crawl space due to rainstorms.

In 2007, the Holmans hired Dan Flammang to retile the bathroom floor in the northeast corner of the house. After noticing that the bathroom floor was sagging, Flammang went into the crawl space to investigate the problem. Flammang identified rotting in the sill plate and floor joists that appeared to have been caused by moisture. Some areas of the sill plate had rotted away completely, which Flammang believed was the primary cause of the sagging floor. Flammang testified that he advised the Holmans about the rotting sill plate and the sagging floor, but that they chose not to take any corrective action at that time. Tom Holman, however, testified that Flammang

advised them that the floor was sagging, but did not mention the rotten sill plate or floor joists.

The Holmans contacted Flammang approximately a year later in May 2008 when they noticed the grout in the tile floor was cracking. Flammang returned to the house and advised the Holmans that the cracking was due to the sagging floor. Flammang stabilized the floor by placing a beam and two jacks under the floor joists to prop up the floor in the northeast corner of the house. The Holmans did not request any additional work to be done to repair the rotting sill plate or floor joists. However, Tom Holman did instruct Flammang to run caulking along the north side of the house, where the sidewalk had separated from the foundation, to prevent further water leakage into the crawl space. In 2009, the Holmans hired Flammang to install cement siding on the house and recaulk around the foundation.

In June 2011, the Holmans contacted a real estate agent to assist them in selling their house. The agent discussed the procedures necessary to properly list the home for sale, including completion of a seller property condition disclosure statement. The agent instructed them to fill out the disclosure form completely, accurately, and honestly regarding the condition of the house, inside and out. Tom Holman testified that he knew the disclosure statement was going to be provided to potential buyers and that he intended for them to rely upon it.

The first page of the disclosure statement contains the following language:

> This statement is a disclosure of the condition of the real property known by the seller on the date on which this statement is signed. This statement is not a warranty of any kind by the seller or any agent representing a principal in the transaction, and should not be accepted as a substitute for any inspection or warranty that the purchaser may wish to obtain. Even though the information provided in this statement is not a warranty, the purchaser may rely on the information contained herein in deciding whether and on what terms to purchase the real property.

The disclosure statement contains several questions regarding the structural condition of the property, among other things, to which the seller must respond by checking one of three boxes: "Yes," "No," or "Do not know." If the answer to any question is "Yes," the seller is instructed to explain the condition in the comments section on the following page. The questions on the disclosure statement that are relevant to this case are as follows:

• "Has there been leakage/seepage in the basement or crawl space?"
• "Are there any structural problems with the structures on the real property?"
• "Have you experienced any moving or settling of the . . . floor?"

The Holmans checked "Yes" regarding "leakage/seepage" in the crawl space and wrote "Previous to new siding" in the margin. They checked "No" regarding structural problems and moving or settling of the floor. Tom Holman testified that he answered "No" to the question regarding moving or settling of the floor, because the issue with the sagging floor had been repaired. The Holmans did not disclose the sagging floor, the rotten sill plate and floor joists, the installation of the beam and floor jacks in the crawl space, or any of the prior plumbing leaks into the crawl space.

The disclosure statement was provided to the Botts soon after they became interested in purchasing the home. Jeff Bott testified that he and his wife reviewed the disclosure statement and relied upon it in deciding to purchase the property. They also visited the home with their real estate agent, Jane Heimbach, on at least three occasions and spent a total of 3 or 4 hours inspecting the home. The Botts took their time and checked out the home carefully, although they did not go into the crawl space. Heimbach testified that the Botts did everything a prudent buyer would do. Neither Heimbach nor the Botts observed anything in the home that led them to believe there was a defect in the flooring system.

The Botts entered into a purchase agreement with the Holmans on June 16, 2011. The purchase agreement was contingent upon a home inspection. Heimbach testified that

she recommends home buyers obtain an inspection regardless of the disclosure statement, so that they can learn as much as possible about the property before buying it. If there are conditions checked "Yes" on the disclosure statement, she makes sure those things are thoroughly addressed by the home inspector.

Heimbach made arrangements for a whole home inspection by Darrel Atchison. Atchison completed the inspection after the parties had signed the purchase agreement, but prior to closing. Atchison's inspection report did not indicate any problems with the crawl space or flooring system. The Botts did not actually receive a copy of the inspection report until after they closed on the purchase of the house; however, Heimbach had told them it was a clean inspection, with no deficiencies noted.

Unbeknownst to Heimbach and the Botts, Atchison went no more than 5 or 10 feet into the crawl space and spent only 3 minutes inspecting it. Atchison testified that he was unable to conduct a proper inspection of the crawl space, because he was having back problems and was in a lot of pain at the time. He did not inform Heimbach or the Botts that he had been unable to properly inspect the crawl space. Atchison testified that if he had done a proper inspection, he would have observed the damage to the sill plate, floor joists, and insulation, and that he would have reported those defects on his inspection report.

Jeff Bott testified that although the inspection should have disclosed the damage to the flooring system, he and his wife had already relied on the disclosure statement in making an offer and deciding to purchase the property prior to ordering an inspection. In fact, he testified that they would have walked away from the property without ever making an offer if the Holmans had disclosed the sagging floor on the disclosure statement. Additionally, Heimbach testified that she would have specifically mentioned the sagging floor to Atchison and directed him to check it thoroughly if she had known about it.

Following a bench trial, the district court found in favor of the Holmans. It found that the Holmans were aware of the

sagging floor and water damage under the bathroom and that they failed to disclose those conditions. Nonetheless, it concluded that the disclosure statement, considered as a whole, did not establish fraudulent misrepresentation or fraudulent concealment because it put the Botts on notice that there had been water leakage in the crawl space and a reasonable inspection would have disclosed the damage. The Botts timely appeal.

## ASSIGNMENTS OF ERROR

On appeal, the Botts allege that the district court erred in (1) treating the Holmans' property condition disclosure statement as a contract, (2) failing to find that the Holmans' conduct constituted fraudulent concealment, and (3) failing to find that the Holmans' conduct constituted fraudulent misrepresentation.

## STANDARD OF REVIEW

[1,2] An action for rescission sounds in equity. *Cao v. Nguyen*, 258 Neb. 1027, 607 N.W.2d 528 (2000). In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a decision independent of the findings of the trial court. *Id*. Where credible evidence is in conflict on a material issue of fact, the appellate court will consider and may give weight to the fact the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

We begin our analysis by addressing the Botts' third assignment of error regarding their claim of fraudulent misrepresentation.

[3,4] To maintain an action for fraudulent misrepresentation, a plaintiff must allege and prove the following elements: (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff reasonably did so rely; and (6) that the plaintiff

suffered damage as a result. *Cao v. Nguyen, supra*. The party alleging fraud as the basis for rescission must prove all the elements of the fraudulent conduct by clear and convincing evidence. *Id*.

*Representations*.

The Holmans' representation on the disclosure statement that they had not experienced moving or settling of the floor was false. The evidence is clear and convincing that Flammang told the Holmans that the bathroom floor was sagging or settling. Tom Holman testified that the reason he marked "No" was because the problem had been corrected; however, the question asks, "Have you experienced any moving or settling . . . ," which clearly inquires into the past. See *Nelson v. Wardyn*, 19 Neb. App. 864, 820 N.W.2d 82 (2012).

[5,6] The Holmans also misled the Botts in their answer to the question regarding leakage in the crawl space by failing to disclose the history of plumbing leaks. Their partial disclosure that leakage had occurred only "[p]revious to new siding" gave the impression that it was an isolated occurrence that had been fully resolved. A statement that is true but partial or incomplete may be a misrepresentation, because it is misleading when it purports to tell the whole truth and does not. *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 280 Neb. 997, 792 N.W.2d 484 (2011). When a party makes a partial or fragmentary statement that is materially misleading because of the party's failure to state additional or qualifying facts, the statement is fraudulent. *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 280 Neb. 904, 791 N.W.2d 317 (2010).

The Botts further claim that the Holmans made a misrepresentation of fact by answering "No" to the question regarding structural problems. The trial court determined that despite the conflicting testimony of Tom Holman and Flammang, the Holmans were aware of the damage to the floor joist ends, sill plates, and rim joists. The evidence is not clear and convincing, however, that either Tom Holman or Sharon Holman considered this a structural problem. Furthermore, the question is in the present tense, inquiring whether there "[a]re . . .

any structural problems . . . ." There is no evidence that the Holmans knew that the house had structural problems at the time they completed the disclosure statement.

Based upon the Holmans' answers to the questions regarding movement or settling of the floor and leakage in the crawl space, we find that the first three elements of fraudulent misrepresentation have been met.

*Reliance.*

[7] To succeed on a claim of fraudulent misrepresentation, a plaintiff must prove not only a misrepresentation, but also justifiable reliance upon that representation. The disclosure statement provides that although not a substitute for an inspection, the purchaser may rely on the information contained therein in determining whether to purchase the property. Tom Holman admitted that he intended potential purchasers to rely upon the disclosure statement, along with any inspection report. Jeff Bott testified that he and his wife did in fact rely on the disclosure statement in deciding to make an offer and ultimately purchase the property.

[8-10] A party is justified in relying upon a representation made to the party as a positive statement of fact when an investigation would be required to ascertain its falsity. *Cao v. Nguyen*, 258 Neb. 1027, 607 N.W.2d 528 (2000). However, Nebraska law imposes a duty of ordinary prudence upon a party claiming fraudulent misrepresentation. *Precision Enters. v. Duffack Enters.*, 14 Neb. App. 512, 710 N.W.2d 348 (2006), *overruled on other grounds, Knights of Columbus Council 3152 v. KFS BD, Inc., supra*. In fraudulent misrepresentation cases, whether the plaintiff exercised ordinary prudence is relevant to whether the plaintiff justifiably relied on the misrepresentation when the means of discovering the truth was in the plaintiff's hands. See *Lucky 7 v. THT Realty*, 278 Neb. 997, 775 N.W.2d 671 (2009).

The Nebraska Supreme Court has held that the ordinary prudence rule does not apply where the defects are latent. See *Foxley Cattle Co. v. Bank of Mead*, 196 Neb. 1, 241 N.W.2d 495 (1976). Rather, "[i]t is applicable where the party who claims to have been defrauded . . . purchased real estate after

inspecting the property and failed to notice obvious defects." *Omaha Nat. Bank v. Manufacturers Life Ins. Co.*, 213 Neb. 873, 883, 332 N.W.2d 196, 202 (1983). See, also, *Lucky 7 v. THT Realty*, 278 Neb. at 1003-04, 775 N.W.2d at 676 (noting that "we have rejected misrepresentation claims when the truth of the property's condition was obviously apparent to a potential buyer upon inspection").

The defects at issue in this case were not obviously apparent to a potential buyer and would have been discoverable only upon crawling underneath the house in a space that was unlit and only 36 inches in height. Heimbach testified that the Botts did everything that prudent home buyers would do. They visited the property on multiple occasions and spent 3 or 4 hours carefully inspecting the premises. Neither the Botts nor Heimbach, who was an experienced real estate agent, observed anything that led them to believe that the property had structural damage within the flooring system.

Although the home inspection should have disclosed the defects, the Botts relied on the disclosure statement in deciding to make an offer and purchase the home before an inspection was ever ordered. Jeff Bott testified that he would have walked away from the property without having made an offer if the Holmans had disclosed the sagging floor. In other words, although the flawed home inspection added to the Botts' belief that there were no serious problems with the house, they never would have formed such a belief had the Holmans properly disclosed the defects on the disclosure statement. The disclosure statement specifically states that it may be relied upon in deciding whether and on what terms to purchase the property. The Botts were entitled to rely on the disclosure statement, and we find that they did so reasonably.

[11] The fact that a plaintiff made inquiries elsewhere which did not disclose the falsity of the representations is not, as a matter of law, a defense to a fraud action. *Henderson v. Forman*, 231 Neb. 440, 436 N.W.2d 526 (1989); *Foxley Cattle Co. v. Bank of Mead*, 196 Neb. 1, 241 N.W.2d 495 (1976). Thus, we find that the fraudulent misrepresentations on the disclosure statement are not excused by the fact that a proper home inspection would have revealed the defects.

The evidence clearly shows that the Botts suffered damages as a result of the Holmans' fraudulent misrepresentations. Although there was conflicting testimony regarding the estimated repair costs, it was undisputed that the flooring system was damaged and in need of significant repairs.

Based on our de novo review of the record, we conclude that (1) the Holmans made representations that they had not experienced any moving or settling of the floor and that there had been "leakage/seepage" in the crawl space only prior to the installation of new siding; (2) such representations were false; (3) when such representations were made, they were known to be false or were made recklessly without knowledge of the truth and as positive assertions; (4) the Holmans intended for the Botts to rely upon such representations; (5) the Botts did in fact rely upon the representations; and (6) the Botts were damaged as a result. Therefore, the Botts have proved a cause of action for fraudulent misrepresentation.

Because the Botts have established their claim of fraudulent misrepresentation, we need not address the remaining assignments of error. We note, however, that the Holmans stated several affirmative defenses in their answer, and we remand the matter to the trial court for consideration of these defenses.

## CONCLUSION

We conclude that the evidence established each of the required elements of fraudulent misrepresentation by clear and convincing evidence. Accordingly, the judgment of the district court is reversed and the matter is remanded for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.